UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GEORGE MICHAEL HODGES,

        Petitioner,

v.                                                      Case No. 8:03-cv-1591-T-24TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____/


## <u>ORDER</u>

This cause is before the Court on Petitioner George Michael Hodge's 28 U.S.C. § 2254 petition for writ of habeas corpus. (Dkt. 30). Hodges, a Florida prisoner under sentence of death, challenges his conviction and sentence for first degree murder entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

BACKGROUND

On July 13, 1989, Hodges was convicted by a jury of the first degree murder of 20-year-old Betty Ricks. (App. A5/650)[1] On July 14, 1989, the jury recommended a death

_____

[1] Respondent filed the state court record as Dkt. 37. Citations are to the appendices and page numbers found in Dkt. 37.

sentence by a vote of 10 to 2. (App. A6/741)

Subsequently, on August 10, 1989, the state trial court sentenced Hodges to death. The state trial court found two aggravating factors: 1) Hodges' commission of the murder was cold, calculated and premeditated, and 2) Hodges' commission of the murder was to disrupt or hinder the lawful exercise of government functions or enforcement of the law. Hodges v. State, 595 So. 2d 929, 934 (Fla. 1992) In mitigation, the state trial court considered the testimony of Hodges' family members concerning his character and dedication to his family relationships, including his loyalty to his wife and loving relationship with his stepson. (App. A6/795-800).

Hodges appealed. On January 23, 1992, the Florida Supreme Court affirmed Hodges' conviction and sentence. Hodges v. State, 595 S. 2d 929 (Fla. 1992) (Case No. 74,671). The Florida Supreme Court set out the factual background of this case:

> In November 1986 Plant City Police arrested Hodges for indecent exposure based on the complaint of a twenty-year-old convenience store clerk. Around 6:00 a.m. on January 8, 1987, the day Hodges' indecent exposure charge was scheduled for a criminal diversion program arbitration hearing, the clerk was found lying next to her car in the store's parking lot. She had been shot twice with a rifle and died the following day without regaining consciousness.

> Hodges worked on the maintenance crew of a department store located across the road from the convenience store. A co-worker told police that she saw Hodges' truck at the convenience store around 5:40 a.m. on January 8. Hodges, however, claimed to have been home asleep at the time of the murder because he did not have to work that day. His stepson, Jesse Watson, and his wife, Jesse's mother, supported his story. The police took a rifle from the Hodges' residence that turned out not to be the murder weapon. The investigation kept coming back to Hodges, however, and the police arrested him for this murder in February 1989.

> At trial, Watson's girlfriend testified that, during the summer of 1988, she asked Hodges if he had ever shot anyone. She said he responded that he had shot a girl and had given Watson's rifle to the police and had disposed of his.

Hodges' wife, contrary to her original statement to the police, testified that she did not know if Hodges had been in bed all night or when he had gotten up, that her son and husband had identical rifles, and that she did not know that Hodges had been arrested for indecent exposure.

As did his mother's, Watson's trial testimony differed from his original statement. He testified that he and Hodges had identical rifles and that his, not Hodges', had been given to the police. He said that he awakened before 6:00 a.m. the morning of the murder and heard Hodges drive up in his truck. Hodges then came into the kitchen carrying his rifle. When asked why he did not originally tell the police about this, he responded that he had wanted to protect Hodges. Watson also said that, two months after the murder, he saw the rifle in the back of Hodges' truck, wrapped in dirty plastic, and that there was a hole in the ground near the toolshed. He also testified that, several months later, Hodges told him that he had shot the girl at the convenience store.

The jury convicted Hodges as charged, and the penalty proceeding began the following day. At the end of the defense presentation counsel told the court that Hodges had become uncooperative, and Hodges stated on the record that he did not want to testify in his own behalf. After the jury retired to decide its recommendation, it sent a question to the court regarding the instructions. The court had the parties return to discuss the jury's request, but, shortly before that, Hodges had attempted to commit suicide in his holding cell. Defense counsel moved for a continuance and said that he could not waive Hodges' presence. The court, however, held that Hodges had voluntarily absented himself, told the jury that Hodges was absent because of a medical emergency, and reread the instructions on aggravating and mitigating circumstances. When the jury returned with its recommendation of death, Hodges was still absent.

After accepting the jury's recommendation, the court appointed two mental health experts to determine Hodges' competency to be sentenced. These experts' reports cautioned that Hodges might attempt to commit suicide again because of his anger and frustration, but concluded that he was competent to be sentenced. After considering these reports and hearing argument on the appropriate sentence, the court sentenced Hodges to death.

Hodges, 595 So. 2d at 930-31. (See App A13)

On July 16, 1992, Hodges filed a Petition for Writ of Certiorari to the United States

Supreme Court in Case No. 92-5228 (See App B1) presenting the following question:

Is the Florida Standard Jury Instruction on the Cold, Calculated, and

Premeditated aggravating circumstance for capital sentencing proceedings unconstitutionally vague in violation of the Eighth and Fourteenth Amendments?

On October 5, 1992, the United States Supreme Court granted the Petition and remanded the case to the Florida Supreme Court "for further consideration in light of Espinosa v. Florida, 505 U.S. 1079 (1992)." Hodges v. Florida, 506 U.S. 803 (1992) (App. B3). On remand from the United States Supreme Court, the Florida Supreme Court reaffirmed its earlier decision. Hodges v. State, 619 So. 2d 272 (1993).[2]

While the appeal on remand was pending, Hodges filed a state petition for writ of habeas corpus (Florida Supreme Court Case No. 77,302). The Florida Supreme Court denied the petition without prejudice to Hodges' filing a rule 3.850 motion in the state trial court. Hodges v. State, 598 So. 2d 76 (Fla. 1992).

Hodges' filed his initial rule 3.850 motion in the state trial court on June 23, 1995. On November 29, 1995, Hodges amended this motion. On July 31, 1996, the state trial court granted in part and denied in part Hodges' amended rule 3.850 motion. (App. D11/1585-1606). On September 9, 1996, Hodges was given the opportunity to file a Motion To Compel, outlining any outstanding public records requests. He filed the motion to compel on September 30, 1996. (Appendix D11/1622-1627). On October 28, 1996, the state trial court held a hearing on the motion to compel and granted Hodges' motion to compel with regard to records from Hillsborough County.

---

[2] The Florida Supreme Court found that the Heinous, Atrocious, and Cruel aggravating factor (the subject of Espinosa) played no part in Hodges' sentencing, but that the Cold, Calculated, and Premeditated ("CCP") aggravating factor did. The Florida Supreme Court found that the challenge to the sufficiency of the CCP instruction was not preserved for review, and that any error in the instruction was harmless and would not have affected the jury's sentencing recommendation or the state trial court judge's sentence. Hodges v. State, 619 So. 2d 272, 273 (Fla.), cert. denied, 510 U..S. 996 (1993).

On February 28, 1997, Hodges filed a second amended rule 3.850 motion. On January 25, 1999, a <u>Huff</u> [3] hearing was held on the second amended rule 3.850 motion. The state trial court granted an evidentiary hearing on the following claims:

1)  Ineffective assistance of counsel at the penalty phase because counsel had failed to adequately investigate and prepare additional mitigating evidence, had failed to adequately challenge the State's case, and had failed to adequately object to Eighth Amendment error;

2)  Ineffective assistance of counsel in that trial counsel had failed to obtain mental health experts prior to Hodges' trial, and further that the mental health experts who evaluated Hodges regarding his competence to stand trial after the jury's recommendation of death did not render adequate mental health assistance;

3) Ineffective assistance of counsel at both the pretrial and the guilt/innocence phases of his trial, in that counsel had failed to adequately prepare Hodges' case and zealously advocate on behalf of his client by failing to present to the court or the jury Hodges' mental state in order thereby to negate the specific intent necessary for the offense charged; and

4)  Ineffective assistance of counsel for failing to object or argue that the burden of proof had shifted to Hodges to prove that death was an inappropriate punishment.

All other claims were summarily denied. (App. D4/730-775). On November 2 and 3, 2000, and January 29, 2001, the state trial court held an evidentiary hearing. On June 1, 2001, the state trial court denied Hodges' [second amended] motion to vacate. (App. D11/1547-1582).

Hodges appealed the denial of rule 3.850 relief to the Florida Supreme Court. (Case No. SC01-1718).  He filed his initial brief on April 22, 2002.  In 2003, the Florida Supreme Court affirmed the denial of rule 3.850 relief. <u>See</u> <u>Hodges v. State</u>, 885 So. 2d 338 (Fla. 2003). (App. D31) Also, on April 22, 2002, Hodges filed a state petition for writ of habeas

_____

[3] <u>Huff v. State</u>, 622 So. 2d 982 (Fla. 1993).

corpus in case No. SC02-949.  (App. D23) The Florida Supreme Court denied the petition. <u>Hodges v. State</u>, 885 So. 2d 338 (Fla. 2003). (App. D31)

On March 4, 2005, Hodges filed an untimely and successive state petition for writ of habeas corpus alleging that his right of confrontation was violated when the State was permitted to introduce hearsay testimony "made by the deceased victim regarding a prior allegation of criminal conduct that was not subject to cross-examination." (App. F1). Hodges alleged that <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) errors occurred in both the guilt and penalty phases of his trial. On June 23, 2005, the Florida Supreme Court, in Case No. SC05-377, denied the habeas corpus petition. <u>Hodges v. Crosby</u>, 907 So. 2d 1170 (Fla. 2005). (App. F4).

On August 1, 2003, <u>while Hodges was still proceeding in state court</u>, Hodges filed a motion for appointment of counsel for the preparation of his federal habeas corpus petition in this Court.  Counsel was subsequently appointed.  On January 1, 2006, counsel for Hodges filed the present federal habeas corpus petition.  The petition is timely.[4]

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state court's resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary

---

[4] This Court notes that factors contributing to the delay in sentencing in the state court were; 1) the direct appeal took three years from the date of filing to the issuance of a mandate; 2) the state trial court considered the rule 3.850 motion for six years before rendering a decision.

to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court's decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland's two-part test requires a Petitioner to demonstrate that counsel's performance was deficience and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

The issues have been fully briefed and the case is ready for decision. No evidentiary hearing is necessary because the record is fully developed. All of the claims lack merit and the petition will be **DENIED**.

**GROUND I**

**WHETHER MR. HODGES' RIGHT OF CONFRONTATION WAS VIOLATED AT HIS CAPITAL TRIAL WHEN THE STATE WAS PERMITTED TO INTRODUCE HEARSAY TESTIMONY RELATING STATEMENTS MADE BY THE VICTIM.** (As stated by Petitioner)

Hodges claims that Ricks' statements to the police and to her sister -- that Hodges had been trying to get Ricks to drop the indecent exposure charge -- were improperly

introduced during both the guilt phase and the penalty phase of Hodges' trial. Ground one

has no merit.

Guilt Phase

On direct appeal, the Florida Supreme Court found that the victim's statements

should not have been admitted during the <u>guilt</u> phase, but that any error was harmless.

This Court agrees.  The Florida Supreme Court held:

> In the guilt phase the court allowed two detectives to testify, over objection, that the victim was adamant about prosecuting Hodges for indecent exposure. These detectives repeated that testimony in the penalty phase and also testified that the victim told them Hodges had been trying to get her to drop the indecent exposure charge. The victim's sister also testified to those matters, over objection, in the penalty phase. Hodges now argues that what the victim thought and said about prosecuting him was inadmissible hearsay. We agree that this hearsay should not have been admitted in the guilt phase.

> Subsection 90.801(1)(c), Florida Statutes (1989), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The victim's statements were admitted to prove that she desired prosecution of Hodges. The State used the statements to prove that Hodges had a motive to kill the victim. The truth of the matter asserted was the victim's adherence to her desire to prosecute and, thus, the statements fall within the definition of hearsay.

> The State suggests that if the statements were hearsay, an exception to the prohibition of their admission exists because they were used to prove a state of mind. In <u>Bailey v. State</u>, 419 So. 2d 721 (Fla. 1st DCA 1982), the district court correctly held that statements of a victim cannot be used to prove the state of mind or motive of a defendant because the hearsay exception created by subsection 90.803(3)(a), Florida Statutes (1989), does not apply to such a situation. We conclude, therefore, that the admission of the detectives' testimony as to statements made by the victim was error.

> We then must determine whether the admission was harmless error. On the day of the homicide Hodges was scheduled for a pretrial diversion interview on the indecent exposure charge which had been initiated by the victim's complaint. On that date, but sometime after the homicide, Hodges called the mediator of the Community Mediation Program, told her there was

no reason for him to come through diversion, and asked for the case to be sent back to the state attorney's office. Thus, it appears clear that Hodges knew of his continued prosecution. The victim's statements of her desire to continue prosecution become cumulative and could not have, in and of themselves, been a critical factor in the jury's deliberation. We, therefore, conclude that admitting the detectives' testimony was harmless error.

Hodges, 595 So. 2d at 931-932.(App. A13)

The admission of the detectives' testimony as to the out-of-court statements made by Ricks was error; however, the error was harmless. Even without the hearsay statements, there was ample evidence of Hodges' guilt. Hodges' truck was observed at the murder scene at the time of the murder. Witnesses disputed his alibi defense. Hodges confessed killing Ricks to two different people.

## Penalty Phase

In rejecting Hodges' claim of error regarding the admission of the victim's statements during the penalty phase, the Florida Supreme Court stated:

> During the penalty phase, two detectives and the victim's sister testified to the victim's statements about continuing to prosecute Hodges. Although we have held that this hearsay should not have been admitted during the guilt phase, "both the state and the defendant can present evidence at the penalty phase that might have been barred at trial because a 'narrow interpretation of the rules of evidence is not to be enforced.'" Chandler v. State, 534 So. 2d 701, 703 (Fla. 1988), cert. denied, 490 U.S. 1075, 104 L. Ed. 2d 652, 109 S. Ct. 2089 (1989) (quoting State v. Dixon, 283 So. 2d 1, 7 (Fla. 1973), cert. denied, 416 U.S. 943, 40 L. Ed. 2d 295, 94 S. Ct. 1950 (1974)). The admission of evidence is within a trial court's discretion, and Hodges has shown no abuse of discretion in the trial court's allowing the jury to hear this evidence. Hodges, 595 So. 2d at 933 (App. A13)

Under Florida law, hearsay evidence was admissible in the penalty phase proceeding. Section 921.141(1), Fla. Stat. (1987) states:

> In the proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or

mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received regardless of admissibility under the exclusionary rules of evidence, provided the defendant is afforded a fair opportunity to rebut any hearsay statements.

Detective Orzechowski testified that Betty Ricks told him that Hodges "kept trying to get her to drop the charges" and that his doing so frightened her. (App. A6/683) Detective Horn testified that Betty Ricks told him that Hodges came in a few times to try to get her to drop the indecent exposure charge. (App. A6/685) Betty Ricks' sister, Deborah Ricks, testified that she usually spoke to her sister every morning about 6:30. One morning, Betty called Deborah and said that "the guy who flashed her" came to the Beverage Barn (the convenience store) and asked Betty to drop the charges. Betty said that Hodges told her he had a family and a job and a reputation to protect. Betty said that she told him that he should have thought of that before he did "it." (App. A6/690)

These statements were relevant to establish the aggravating factor "that the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of the law" under the provisions of Section 921.141(5)(g), Florida Statutes. These statements support the state trial court's finding that, having failed to convince the victim to drop the charges, and facing certain prosecution, Hodges chose to eliminate the charges by permanently silencing Betty Ricks.

Habeas Corpus Petition

Ineffective Assistance of Appellate Counsel

In his first state habeas corpus petition, Hodges argued that his appellate counsel was ineffective for failing to raise ground one on direct appeal. The Florida Supreme Court properly denied the state habeas corpus petition, stating:

The record shows that upon defense counsel's objection to the introduction of testimony revealing the nature of the victim's charge against Hodges, the trial court received argument underscoring the relevance of the evidence to show that prosecution of the charge angered Hodges, who maintained that the incident was an accident. The trial court thus reasonably concluded that revealing the nature of the charge would illuminate a material fact at issue--namely Hodges' attempt to characterize the incident as an accident and why continued prosecution may have motivated him to commit murder. There is no basis to conclude that the trial court abused its discretion in deeming the evidence relevant.

Regardless of relevancy of collateral crime evidence, however, admissibility is improper where the probative value of the evidence is substantially outweighed by undue prejudice. See Bryan v. State, 533 So. 2d 744, 746 (Fla. 1988). Based on the facts of the case, Hodges cannot establish that the prejudicial impact of the evidence outweighed its probative value. Hodges stipulated to the fact that the woman he stood accused of murdering had filed charges against him and was adamant about prosecution. With that fact already in the minds of the jury, it defies logic to conclude that the scale balancing probative value versus prejudicial impact would have been tipped by revealing the nature of the pending charges. With almost no probability of overcoming the abuse of discretion standard, counsel cannot be faulted for failing to raise the claim on appeal. See Kokal v. Dugger, 718 So. 2d 138, 142 (Fla. 1998).

Hodges, 885 So. 2d at 357-358. (App. D31)

Successive 2005 State Habeas Corpus Petition

Finally, in 2005, Hodges filed a successive state habeas petition in the Florida Supreme Court based on Crawford v. Washington, 541 U.S. 36 (2004).  In response, the State asserted that Hodges' claim was untimely, successive, procedurally barred, and not cognizable because Crawford v. Washington is not retroactive. Furthermore, even if Crawford v. Washington arguably applied, Hodges' procedurally-barred petition was also without merit and error, if any, was harmless. On June 23, 2005, the Florida Supreme Court denied Hodges' successive petition for writ of habeas corpus. Hodges v. Crosby, 907 So. 2d 1170 (Fla. 2005).

In 2006, the Eleventh Circuit held that the rule of law announced in <u>Crawford v. Washington</u>, is not a new rule of law and does not apply retroactively on habeas review. <u>Epsy v. Massac</u>, 443 F.3d 1362, 1366 (11th Cir. 2006).[5]

In <u>Davis v. Washington</u>, 126 S.Ct. 2266 (2006), the Supreme Court ruled:

> . . . when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in <u>Crawford</u>: that "the rule of forfeiture by wrongdoing ⋯ extinguishes confrontation claims on essentially equitable grounds." 541 U.S. at 62, 124 S.Ct. 1354 (citing <u>Reynolds</u>, 98 U.S., at 158-159). That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

126 S.Ct. at 2280.

Pursuant to <u>Davis</u>, Hodges forfeited his constitutional right to confrontation by killing Betty Ricks.

Hodges has not shown that the state courts' decisions relative to ground one were "contrary to" or an "unreasonable application" of United States Supreme Court precedent. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003). The state courts' application of clearly established law "must be more than incorrect or erroneous," it must be "objectively unreasonable." <u>Id</u>.

Ground one does not warrant habeas corpus relief.

---

[5] See <u>Williams v. Taylor</u>, 529 U.S. 362, 379-80, 390 (2000) (noting that AEDPA codified <u>Teague</u> [489 U.S. 288 (1989)] and that the threshold question under AEDPA is whether a petitioner seeks to apply a rule of law that was clearly established at the time his state court conviction became final).

**GROUND II**

**WHETHER THE TRIAL COURT VIOLATED MR. HODGES' DUE PROCESS RIGHT TO BE MENTALLY COMPETENT TO STAND TRIAL WHEN IT PROCEEDED WITH THE PENALTY PHASE FOLLOWING MR. HODGES' SUICIDE ATTEMPT WITHOUT FIRST CONDUCTING A COMPETENCY HEARING.** (As stated by Petitioner)

**GROUND III**

**WHETHER THE TRIAL COURT DENIED MR. HODGES HIS DUE PROCESS RIGHT TO BE PRESENT WHEN THE COURT PROCEEDED WITH THE PENALTY PHASE AFTER MR. HODGES' SUICIDE ATTEMPT.** (As stated by Petitioner)

Grounds two and three are intertwined claims based on Hodges' suicide attempt after the jury retired to deliberate in the penalty phase. In ground two, Hodges alleges that his due process rights were violated when the state trial court proceeded with the penalty phase following Hodges' suicide attempt, without first conducting a competency hearing. (Petition, Dkt. 30, at page 18). In ground three, Hodges alleges that his due process rights were violated when the state trial court proceeded with the penalty phase after his suicide attempt and without his presence. (Petition, Dkt. 30, at page 24). Hodges raised grounds two and three as a single claim on direct appeal.[6]

On direct appeal, the Florida Supreme Court summarized the proceedings in the state trial court, noting that Hodges' penalty phase began the day after the jury returned the guilty verdict. At the end of the defense presentation, defense counsel informed the state trial court that Hodges had become uncooperative, and Hodges stated that he did not want

---

[6] On direct appeal, Hodges framed this single issue as "Whether the Trial Court Violated Appellant's Due Process Rights to Be Mentally Competent to Stand Trial and to Be Present When it Proceeded with the Penalty Phase of Trial Following Appellant's Suicide Attempt Without First Conducting a Competency Hearing."

to testify. After the jury retired to deliberate on the sentence recommendation, the jury sent a question to the state trial court regarding the jury instructions. Shortly before the parties returned to court to discuss the jury's question, Hodges attempted to commit suicide in his holding cell.

Defense counsel moved for a continuance of the penalty phase of the trial and said that he could not waive Hodges' presence at the proceeding. The state trial court denied the continuance and held that Hodges had voluntarily absented himself from the trial; informed the jury that Hodges was absent because of a medical emergency and reread the penalty phase instructions on aggravating and mitigating circumstances to the jury. The jury retired to the jury room, deliberated further, and then returned with a death sentence recommendation. Hodges was still absent.

After accepting the jury's sentencing recommendation, the state trial court excused the jury and appointed two mental health experts to evaluate Hodges' competency to be sentenced. In their reports, these experts cautioned that Hodges might attempt to commit suicide again because of his anger and frustration, but concluded that Hodges was competent to be sentenced. After considering these reports and hearing argument on the appropriate sentence, the state trial court sentenced Hodges to death. Hodges, 595 So. 2d at 931. (App. A13).

Ground Two

In denying Hodges' competency hearing claim on direct appeal, the Florida Supreme Court stated:

Turning to the penalty phase, Hodges argues that, after his suicide attempt, the court should have halted the proceedings and conducted a competency hearing rather than ruling that Hodges had absented himself

- 14 -

voluntarily and continuing with the penalty phase. The cases that Hodges relies on, however, are distinguishable. E.g., <u>Drope v. Missouri</u>, 420 U.S. 162, 43 L. Ed. 2d 103 , 95 S. Ct. 896 (1975) (defendant shot himself during trial, pretrial report noted antisocial behavior and depression and recommended psychiatric treatment); <u>Nowitzke v. State</u>, 572 So. 2d 1346 (Fla. 1990) (defendant found incompetent to stand trial, later declared competent after treatment and tried in spite of recurring aberrant behavior and defense request for another competency examination); <u>Pridgen v. State</u>, 531 So. 2d 951 (Fla. 1988) (pretrial examination concluded defendant competent to stand trial, prepenalty phase examination showed that condition had worsened, trial court erred in refusing to grant continuance). In the instant case, prior to the suicide attempt, Hodges' conduct gave no indication that his competency might be of concern, and his attempted suicide surprised everyone connected with the case. Thus, there were no reasonable grounds to question his competency.

"A defendant has the constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence." <u>Peede v. State</u>, 474 So. 2d 808, 812 (Fla. 1985), <u>cert. denied</u>, 477 U.S. 909, 91 L. Ed. 2d 575, 106 S. Ct. 3286 (1986). Here Hodges' trial had been concluded, and the penalty phase was all but over. The court discussed the jury's request with the attorneys and merely reread some of the instructions and then accepted the jury's recommendation regarding penalty. Neither of these instances was a crucial portion of the trial where Hodges' absence would have caused him undue prejudice. <u>Morgan v. State</u>, 492 So. 2d 1072 (Fla. 1986); <u>see Garcia v. State</u>, 492 So. 2d 360 (Fla.), <u>cert. denied</u>, 479 U.S. 1022, 93 L. Ed. 2d 730, 107 S. Ct. 680 (1986); <u>Peede</u>. Although attempted suicide may cast doubt on a person's competence, <u>Drope</u>, on the totality of the circumstances we conclude that the trial court did not err in holding that Hodges voluntarily absented himself. He missed no critical portion of his trial and his conduct gave no indication that he was considering suicide. Therefore, we find no error as to this issue.

<u>Hodges</u>, 595 So. 2d at 932-933 (App. A13).

Hodges alleges that the Florida Supreme Court's decision was contrary to, or an unreasonable application of clearly established federal law, specifically <u>Drope v. Missouri</u>, 420 U.S. 162 (1975), <u>Pate v. Robinson</u>, 383 U.S. 375 (1966), and <u>Dusky v. United States</u>, 362 U.S. 402. In addition, Hodges alleges that the Florida Supreme Court's decision was "unsupported by the record." (Dkt. 31 at 34).

Hodges is not entitled to habeas relief under the AEDPA on any of his allegations.

In <u>Wright v. Secy. for the Dep't of Corr.</u>, 278 F.3d 1245 (11th Cir. 2002), the Eleventh

Circuit summarized the "clearly established federal law" on this issue, stating:

> The clearly established federal law on this issue, as determined by the Supreme Court, is set out in <u>Drope v. Missouri</u>, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975), <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), and <u>Dusky v. United States</u>, 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed. 2d 824 (1960). Under <u>Dusky</u> the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402, 80 S. Ct. at 789 (internal quotation marks omitted). Under <u>Drope</u> and <u>Pate</u> the standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency. <u>Drope</u>, 420 U.S. at 180, 95 S. Ct. at 908; <u>Pate</u>, 383 U.S. at 385, 86 S. Ct. at 842 ("Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the [trial] judge on his own motion must impanel a jury and conduct a sanity hearing . . . .").
>
> . . . In determining whether the state court's decision is an unreasonable application of the law set out in those three Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is objectively unreasonable. <u>See Williams v. Taylor</u>, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000) ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

<u>Wright</u>, 278 F.3d at 1256.

There was no evidence that Hodges' competency was at issue during the trial except

for the attempted suicide after the jury had retired for deliberations.  Further, when Hodges

was examined for competency after the penalty phase and <u>prior to sentencing</u>, he was found competent. As the Eleventh Circuit reiterated in <u>Moore v. Campbell</u>, 344 F.3d 1313, 1321-1324 (11th Cir. 2003), a defendant who was competent to stand trial is not entitled to a new trial on the procedural ground that the state trial judge failed to hold a competency hearing. <u>Id.</u> (citing <u>James v. Singletary</u>, 957 F.2d 1562, 1571-72 (11th Cir. 1992)).

It is understandable that Hodges was depressed after having been found guilty of first degree murder and then having to face the consequences of his actions. The suicide note shows that Hodges understood the charges and understood what he was doing when he attempted suicide. Accordingly, the Florida Supreme Court properly found 1) that there were no reasonable grounds to believe the Hodges was incompetent during the penalty phase; and 2) that, when the jury was already deliberating, there was no requirement that the state trial court suspend the proceedings until Hodges was removed to the hospital and examined. Further, as there was no evidence to suggest that Hodges was incompetent during the penalty phase, Hodges suffered no prejudice from the state trial court's failure to halt the proceedings and hold a competency hearing during the jury's deliberation.

In <u>Diaz v. Secy. for the Dep't of Corr.</u>, 402 F.3d 1136, 1144 (11th Cir. 2005), the Eleventh Circuit recognized that the Supreme Court's decision in <u>Drope</u>, the case on which the habeas petitioner principally relied, "embraced the idea that a competency hearing may be 'deferred until the end of trial.' " 420 U.S. at 182. In <u>Diaz</u>, the Eleventh Circuit also determined that the state trial court's denial of Diaz's ineffective assistance of counsel/competency hearing claim was not contrary to, or an unreasonable application of, <u>Strickland</u>. <u>See Diaz</u>, 402 F.3d at 1145.

Hodges has not raised any issue in ground two that warrants habeas corpus relief.

Ground Three

Hodges' Absence from the Courtroom

On direct appeal, Hodges argued that the state trial court erred in reinstructing the jury, allowing them to proceed with deliberations and accepting their verdict in Hodges' absence. In response, the State argued that Hodges' voluntary absence (after the trial had begun in his presence) did not nullify what had transpired and did not prevent completion of the trial, but rather operated as a waiver of his right to be present.[7]

Although one of the basic rights guaranteed by the confrontation clause of the Sixth Amendment is the right to be present during every critical stage of the trial, that right is not absolute.  See Illinois v. Allen, 397 U.S. 337 (1970). Hodges' attempted suicide constituted a voluntary waiver of his right to be present when the jury returned with its sentencing recommendation.

In Moore v. Campbell, 344 F.3d 1313, 1321-1324 (11th Cir. 2003), a capital

---

[7]  The day after the jury returned its verdict of guilty, the state trial court conducted the penalty phase of Hodges' trial. (App. A5/650; A6/660) The State presented three witnesses, Detective Rick Orzechowski, Detective Craig Horn, and the victim's sister Deborah Ricks. (App. A5/683, 685, 687) The defense presented the testimony of Hodges' mother and brother-in-law in mitigation. (App. A5/693, 697) After the presentation of all of the defense witnesses, and while the jury was out of the court room, defense counsel put on the record that Hodges had originally stated that he wanted to testify, but then had determined that he did not care if he testified or presented any penalty phase defense. (App. A6/700) Hodges was then instructed by the state trial court that he had the right to testify and was questioned concerning his decision not to testify in the penalty phase. (App. A6/701-702)  Hodges admitted on the record that he did not want to testify. The jury was then brought back to the court room for closing argument and jury instructions.

The jury recessed at 11:50 a.m. (App. A6/730) At 12:05 p.m., the jury submitted a question concerning aggravating and mitigating instructions. At the same time, the state trial court was informed that Hodges had attempted suicide in his holding cell and the paramedics had been called. (App. A6/731) After Hodges was taken to the hospital, the state trial court discussed the jury question.  Defense counsel did not waive Hodges'  presence during this discussion or during the rereading of the instructions to the jury. The state trial court reread the original instructions concerning aggravating and mitigating circumstances. Defense counsel did not object to the content of the instructions. (App. A6/734 - 739). At 1:05 p.m. the jury returned a recommended sentence of 10 - 2 for the death sentence. (App. A6/742) The suicide note left by the defendant was made a part of the record. (App. A6/750, App. A7/886-887)

defendant went on a hunger strike during the course of his state trial. The Eleventh Circuit found that the state trial court's determination -- that Moore "undertook a calculated and concerted effort to disrupt his capital murder trial" and that Moore, thus, forfeited his right to be present at the trial -- was not an unreasonable determination of the facts or an unreasonable application of clearly established Supreme Court law." In Moore, the Eleventh Circuit stated, in pertinent part, that "[b]ased upon the lack of clarity of the Supreme Court precedents, we cannot conclude that the state court's determination that a capital defendant in [state court] can forfeit his right to be competent -- that is mentally present -- at trial was contrary to or was an unreasonable application of clearly established Supreme Court precedent."

In Hodges' case, as in Moore, the state trial court's conclusion that a capital defendant could waive his right to be present at trial by virtue of his own deliberate conduct is not contrary to or an unreasonable application of any Supreme Court precedent.

Hodges has not shown that ground three warrants federal habeas corpus relief.

## GROUND IV

**WHETHER MR. HODGES WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE OF HIS TRIAL, CONTRARY TO THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.** (As stated by Petitioner)

Hodges argues that his trial attorneys were ineffective in the penalty phase for failing to conduct a "reasonable investigation" and for failing to present additional mitigation concerning Hodges' deprived childhood and his mental health. This claim was the subject of an evidentiary hearing in the state trial court and was rejected under the Strickland standard. (App. D11/1582). The state trial court found:

. . . Mr. Perry was one of the most experienced trial lawyers in the Public Defender's office and was quite familiar with the process. At the time of trial Mr. Perry was the felony bureau chief in charge of all felony attorneys and had tried "more than five, less than fifteen" capital cases. He conducted a reasonable investigation and did attempt to present mitigating evidence concerning Hodges' background. The witnesses, and Hodges personally, failed to provide him with the information that was presented during the evidentiary hearing. The record also reflects that during the penalty phase Hodges became uncooperative with counsel and announced that he would not testify in his own behalf. This Court finds that Hodges has failed to satisfy the first prong of Strickland, "that counsel made errors ... so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Counsel can not be faulted for failing to present evidence deliberately thwarted by an uncooperative defendant, unwilling or absent family members, and recalcitrant witnesses. See Rutherford v. State, 727 So. 2d 216 (Fla. 1998); Correl v. Dugger, 558 So. 2d 422 (Fla. 1990).

(App. D11/1572-73)

On appeal, the Florida Supreme Court agreed with the state trial court. Hodges, 885 So. 2d at 345-352. (App. D31)

Analysis

In Rutherford v. Crosby, 385 F.3d 1300 (11th Cir. 2004),  another Florida death row inmate argued that his two state court trial counsel rendered ineffective assistance during the penalty phase by failing to adequately investigate and present evidence about the defendant's alcoholism, childhood, marital difficulties, and war experiences; obtain and present expert mitigating evidence about his mental health; and object to the testimony of three witnesses who repeated statements that had been made by the victim. The Rutherford Court emphasized:

In assessing Rutherford's claim that his trial counsel were ineffective we must keep in mind that "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S. Ct. at 2065. In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference - this one to a state court's decision - when we are considering whether to grant federal habeas relief from a state court's

- 20 -

decision. Woodford, 537 U.S. at 24, 123 S. Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). Rutherford must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002).

Rutherford, 385 F.3d at 1308-1309. Hodges, like Rutherford, must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court applied Strickland to the facts of his case in an objectively unreasonable manner. Id. at 1309.

To merit relief on a claim of ineffective assistance of counsel during the penalty phase, Hodges must show not only deficient performance, but also that the deficient performance so prejudiced his defense that, without the alleged errors, there is a "reasonable probability that the balance of aggravating and mitigating circumstances would have been different." Bolender v. Singletary, 16 F.3d 1547, 1556-57 (11th Cir. 1994). In this case, Attorney Perry pursued the investigation of mitigation through the defendant, his family, and mental health experts, and Attorney Perry presented substantial evidence on Hodges' behalf.

At the penalty phase, Hodges himself did not provide counsel with the information that Hodges, in his federal petition, now alleges would have been mitigating. However, counsel interviewed, pre-penalty phase, many of the same family members and witnesses who later testified at the state trial court postconviction evidentiary hearing.

Attorney Perry, who, as the state trial court pointed out, was an experienced criminal defense attorney, testified at the state evidentiary hearing that he was responsible for investigating and presenting mitigating evidence in the penalty phase. He recalled

discussing the case with an investigator and asking him to investigate Hodges' background. (App. D15/385, 390) Attorney Perry also testified that he hired two mental health experts to evaluate Hodges, Drs. Maher and Gamache. The purpose of hiring the doctors, according to Attorney Perry, was to evaluate Hodges concerning his competency -- whether or not there were any mental health problems, and whether or not there was any mitigation to present to the jury. (App. D15/423)

Attorney Perry identified the witnesses he had attempted to contact prior to trial to gather facts concerning Hodges' background. These witnesses included a long-time friend, Ray Riffle, Hodges' parents, Hodges' sisters, Karen Sue Tucker and Cathy Pairier, and various individuals connected to Hodges' employment history. Riffle indicated that he did not want to be involved and refused to supply any information; Hodges' mother testified at the penalty phase; Karen Sue Tucker could not attend the trial based on family circumstances; Cathy Pairier indicated that she would attend but never appeared during the trial; employers indicated that they could not help, with several stating that they could not even remember Hodges. (App. D15/424-429) Attorney Perry also testified that one or both of the mental health experts stated that they would be of no use to Hodges based on their evaluations and that they should not be listed as witnesses. One expert indicated "if he testified, that it may be an aggravating factor." (App. D15/430-431) Additionally, Attorney Perry noted that if either doctor had indicated Hodges suffered from a mental illness, he would have pursued the evidence and presented it to a jury. Finally, he testified that it was a strategic decision not to present the mental health experts, based on the statements by the doctors. (App. D15/432) Moreover, Dr. Maher conceded that although he received background materials prior to the initial interview, he did not thoroughly review them. Based

on this evaluation, Dr. Maher reported to Attorney Perry that he did not find "much in the way of mitigating circumstances." (App. D13/250-51) The fact that these witnesses testified at the postconviction evidentiary hearing to additional facts or to contrary findings, does not establish that trial counsel failed to investigate or that he rendered deficient performance during the penalty phase.

Moreover, where it is the defendant's own failure to cooperate with counsel that prevented counsel from obtaining relevant information pertaining to the penalty phase, trial counsel's failure to find mitigating evidence does not constitute deficient performance. See, Rutherford v. Crosby, 385 F.3d 1300, 1311-1312 (11th Cir. 2004). The state trial court found that Hodges' "counsel can not be faulted for failing to present evidence deliberately thwarted by an uncooperative defendant, unwilling or absent family members, and recalcitrant witnesses" (App. D11/1572-73), citing Rutherford v. State, 727 So. 2d 216 (Fla. 1998); See also, Rutherford v. Crosby, 385 F.3d 1300, 1311-1312 (11th Cir. 2004).[8]

---

[8] In Rutherford, the Florida Supreme Court found that defense witness' testimony was "not conclusive of an abusive situation." In his federal habeas proceeding, Rutherford tried to characterize his childhood as cruel and terrible; however, the Eleventh Circuit noted that the state court finding to the contrary was presumed to be correct, see § 2254(e)(1), and Rutherford did not carry his burden of rebutting that presumption by clear and convincing evidence. Rutherford, 385 F.3d at 1311-1312. Moreover, the Eleventh Circuit found that to "the extent there were any shortcomings in the investigation of Rutherford's family life, he is responsible for them." Although Rutherford argued that trial counsel should have discovered and presented additional expert opinions and records, the Eleventh Circuit, citing Johnston v. Singletary, 162 F.3d 630, 642 (11th Cir. 1998), reiterated that "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." The Eleventh Circuit agreed

with the Florida Supreme Court's decision about this part of Rutherford's ineffective assistance claim, including its observation that "Rutherford's uncooperativeness at trial belies his present claim that his trial counsel was deficient for not investigating and presenting mitigation regarding his harsh childhood and military history," Rutherford II, 727 So. 2d at 225.

For all of these reasons, the Florida Supreme Court's decision rejecting Rutherford's claim that his trial counsel rendered ineffective assistance by not investigating more thoroughly his alcoholism, childhood, marriage, and military experience

(continued...)

At the state evidentiary hearing, Dr. Maher testified that he did not originally find any mitigating evidence to be presented at the penalty phase. (App. D13/251) However, after reviewing the "new material" supplied by the family, the neuropsychological testing and the previously supplied information, he believed that he had initially misdiagnosed Hodges. (App. D14/301) He testified that, after a thorough review of all the information, he was able to ask Hodges specific concrete questions that revealed that Hodges suffered from two disorders; 1) chronic depressive disorder, and 2) brain damage. (App. D14/281, 267) Dr. Maher also suggested that Hodges suffers from symptoms of Post Traumatic Stress Disorder. (App. D14/298) Dr. Maher attributed his new diagnosis of Hodges to his failure to evaluate Hodges correctly originally. (App. D14/303)

At the evidentiary hearing, Hodges also presented Dr. Craig Beaver, an expert in psychology and neuropsychology from Boise, Idaho. (App. D13/141) Dr. Beaver initially opined that when attempting to relate mitigating factors, Hodges may not have been forthright with counsel. (App. D13/161) This reticence, allegedly, was based on the typical close-knit family structure in the subculture of rural Appalachia. (App. D13/156-57).

Dr. Beaver indicated that his interview with Hodges would not have been as informative had he not been previously supplied with Hodges' background information by Hodges' counsel at the evidentiary hearing. (App. D13/161) Dr. Beaver testified that Hodges' chronic depression combined with his neuropsychological dysfunction produced an individual unable to cope with the stress that Hodges was facing prior to the murder.

---

[8](...continued)
    is not objectively unreasonable.

Rutherford, 385 F.3d at 1312-1314

(App. D13/184) This combination, Dr. Beaver claimed, was present at the time of the offense, thus possibly qualifying as the statutory mitigator that Hodges suffered from extreme emotional disturbance. (App. D13/188) Dr. Beaver was less certain concerning Hodges' ability to conform his conduct to the requirements of law as a statutory mitigator. He noted that he did not have enough data to substantiate this mitigator, in part because Hodges denied committing the murder. (App. D13/189)

In rebuttal, the State called Dr. Sidney J. Merin as an expert in neuropsychology and clinical psychology. He testified that he was originally involved in this case after Hodges' suicide attempt prior to sentencing. His initial interview was limited solely to a determination of Hodges' competency to proceed to sentencing. (App. D21/183) He was then contacted by the State to reevaluate Hodges for the purpose of the evidentiary hearing. (App. D21/184) Regarding the question of brain damage, Dr. Merin disagreed with the other experts. In his opinion, Hodges did not suffer from brain damage in either area of the brain, and the symptoms of brain damage described by Drs. Maher and Beaver were more accurately ascribed to Hodges' learning disability. (App. D21/240) Dr. Merin concluded that, with regard to the statutory mitigators, Hodges had the ability to conform his conduct to the law at the time of the offense and he had the ability to perform a cold, calculated, premeditated act within the meaning of the statute. (App. D21/248)

At sentencing, the state trial court found two significant aggravating circumstances. (App. A7/907) In mitigation, the state trial court considered Hodges' family members' testimony concerning his character and dedication to his family relationships, including his loyalty to his wife and the loving relationship with his stepson. (App. A6/798, 907-908). After considering the facts and additional circumstances offered in the postconviction evidentiary

hearing proceedings, the state trial court found:

> Considering the circumstances of this murder, it is highly unlikely that either of the statutory mental health mitigators, §921.141(6)(b),(f), *Florida Statutes* (1987), would have been found to exist by either a jury or a trial judge. And while it is true the non-statutory mitigating circumstances are compelling, it cannot reasonably be said that they would probably have produced a different recommendation or sentence in light of the two statutory aggravating factors found to exist.

> This Court would note that if, in order to obtain another sentencing hearing, Hodges merely had to show that there existed mitigating evidence that was not presented to the jury or the judge, he could meet such a burden. But that is not the quantum of proof required. Hodges has failed to demonstrate that Daniel Perry "made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment". Hodges has failed to show that Daniel Perry's "performance fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." Strickland.

(App. D11/1581-82)

Moreover, in rejecting Hodges' claim that testimony at the evidentiary hearing, if presented at the penalty phase proceeding, would have precluded the finding of the CCP aggravating factor, the state trial court pointed out that:

> The facts surrounding the murder belie the defense contention that Hodges is incapable of this aggravator. When Hodges' efforts to talk the victim out of testifying against him in the indecent exposure charge proved fruitless, he made a decision to kill her. He knew the victim went to work alone very early in the morning. He went to her place of work before she got there and concealed himself and his truck from her sight. After he ambushed her he returned home and exchanged the murder weapon with an identical rifle owned by his stepson. When the police asked for his rifle for ballistic testing, he gave them the stepson's rifle which, of course, proved not to be the rifle from which the fatal projectiles were fired. When interrogated by the police, he provided an alibi and got his wife and stepson to corroborate it. The coverup worked for over a year and probably would have worked indefinitely had not the stepson and wife decided to go to the police and tell the truth. These facts, presented to the jury at trial, belie the present opinion of certain mental health professionals that Hodges is incapable of a cold, calculated and premeditated murder. The facts speak for themselves and

denounce theories incompatible with established fact, albeit that such theories are cloaked in the mantle of "expert opinion".

It is not the Court's intention to denigrate the testimony of the mental health professionals who testified, nor does the court quarrel with the validity of their empirical findings regarding Hodges' mental health. Certain opinions, however, alleging Hodges' inability to carry out this murder do not seem to be firmly grounded and are incompatible with the facts of the case. No reasonable jury could be expected to subscribe to such an untenable argument, flying, as it does, in the face of the facts. Hence, Hodges has failed to show that he was prejudiced by his counsel's failure to advance it.

(App. D11/1578-79)

The Florida Supreme Court further explained:

In addition, neither defense expert could conclude with any precision that Hodges' depression and purported brain dysfunction would preclude him from engaging in a cold, calculated, and premeditated act. As found by the trial court, the fact that Hodges had been convicted of a premeditated murder involving the act of lying in wait for the victim and the concocting of an intricate cover-up would contravene any such conclusion. [n8] According to the State's rebuttal expert, other indicators of Hodges' ability to perform a cold, calculated, and premeditated act included his attempt to talk the victim out of prosecuting the indecent exposure charge prior to the murder, the advanced planning required to commit suicide while in jail, and his success in extricating himself from the impoverished area where he grew up. The fact that these mental health professionals provided such tepid and inconclusive diagnoses after reviewing the background materials provided by postconviction counsel undermines the contention that trial counsel's failure to provide like information resulted in deficient mental evaluations at trial. Indeed, as previously discussed, the content of Hodges' school, medical, and military records, as judged by the postconviction conclusions drawn from them, simply does not support the assertion that trial counsel's failure to provide such information to Hodges' evaluators constituted deficiency resulting in prejudice.

Hodges, 885 So. 2d at 351-352.  (App. D31)

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685,

693 (2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 403-04 (2000)).  Hodges challenges the Florida Supreme Court's rejection of his ineffective assistance penalty phase claim by asserting that the state trial court's factual findings are not supported by the record. In addition, Hodges contends that he is entitled to federal habeas corpus relief under three decisions applying Strickland: <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003), <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) and <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005).

In <u>Wiggins</u>, the United States Supreme Court emphasized that "<u>Strickland</u> does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." <u>Wiggins</u>, 539 U.S. at 533. Rather, a decision not to investigate further is reviewed for "reasonableness in all the circumstances." <u>Id.</u> at 521.

Hodges' claim of ineffective assistance of counsel is refuted by the postconviction record, and was properly denied by the state trial court. The state trial court record reflects that trial counsel pursued reasonable avenues of investigation and presented evidence from family members. That evidence was weighed by the trial court in mitigation. The Florida Supreme Court found that the state trial court's conclusion that counsel conducted a reasonable background investigation was supported by the record. Trial counsel explored Hodges' background to the extent that he was able to do so, often encountering resistance from Hodges' family and friends. Trial counsel also explored possible mental health mitigation with two experts, and the strategic decision against presenting expert mental health testimony was made after counsel investigated the mitigation available. Hodges' suggestion that counsel should not have relied only upon telephone calls to West Virginia is unavailing. <u>Wiggins</u>  reiterates that an investigation is necessary, but does not dictate

that only one particular method of investigation will comport with the Sixth Amendment. In sum, Hodges' self-serving recitation of facts was rejected by the state trial court based on the contrary evidence presented.

In evaluating whether the Florida Supreme Court's decision involved an "unreasonable application" of federal law, the Supreme Court has emphasized that this analysis is an objective one, and that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694 . "A federal habeas court may not issue a writ under the unreasonable application clause simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Marquard v. Sec'y for the Dep't of Corr., 429 F.3d 1278, 1306 (11th Cir. 2005).

In affirming the denial of post-conviction relief in this case, the Florida Supreme Court summarized its conclusion:

> Based on the record in this case, and despite the assertion of new additional postconviction arguments, we conclude that penalty phase counsel conducted a reasonable background investigation. This case is analogous to Asay v. State, in which this Court rejected an ineffective assistance of counsel claim where defense counsel presented mitigating evidence bearing on the defendant's character, but did not discover evidence regarding the defendant's poverty-stricken and abusive childhood. See Asay, 769 So. 2d at 987-88. In determining that trial counsel did not provide unconstitutionally ineffective assistance of counsel, this Court highlighted the reasonableness of counsel's efforts coupled with the difficulty counsel encountered in obtaining information from the defendant's mother. See id. at 988. Likewise, counsel's reasonable efforts to conduct a background investigation in the instant case were significantly hampered by the failure of the defendant, his relatives, and his friends to either participate in the process or provide useful information. See Rutherford, 727 So. 2d at 222.

Hodges, 885 So. 2d at 349. (App. D31)

Here, as in Rutherford and Marquard, the state court concluded that the evidence

presented at the evidentiary hearing did not support Hodges' claim that the "added testimony" would have affected the outcome of the penalty phase. In <u>Marquard</u>, the Eleventh Circuit agreed that the Florida Supreme Court's decision did not involve an unreasonable application of federal law because of the following:

> First, the 3.850 testimony does not establish any statutory mitigating factor. The only statutory factor argued at all by Marquard is: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." Fla. Stat. § 921.141(6)(b). Marquard seems to argue that trial counsel was ineffective in failing to present additional evidence to support this statutory mitigating factor; however, Marquard fails to establish that any such additional evidence exists. Indeed, we see no other evidence in the 3.850 transcript, or elsewhere in the record, that would support the statutory mitigating factor. We thus reject Marquard's claim that his counsel was ineffective in failing to present additional evidence about this factor.

<u>Marquard</u>, 429 F.3d at 1307. This case is not like any of the cases cited by Hodges: <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003) or <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005).

In <u>Wiggins</u>, the jury did not hear any evidence of the defendant's long history of severe physical and repeated sexual abuse at the hands of his alcoholic mother and various foster parents. The abuse occurred throughout Wiggins' childhood, teenage years, and into early adulthood, and Wiggins' "excruciating life history" was documented in medical, school, and social services records. In <u>Wiggins</u>, the only thing offered in mitigation was that he had no prior convictions. In <u>Hodges</u>, the Florida Supreme Court specifically noted that "defense counsel's performance in the instant matter is entirely distinguishable from that deemed constitutionally deficient in <u>Wiggins</u>." <u>Hodges</u>, 885 So. 2d at 349 (App. D31).

In <u>Williams</u>, among other things, defense counsel failed to conduct an investigation

that would have uncovered extensive state records graphically describing Williams' "nightmarish childhood" and failed to present any evidence that Williams was "borderline mentally retarded." Williams, 529 U.S. at 395-96. In Rompilla, defense counsel knew that the prosecution intended to seek the death penalty by proving Rompilla had a significant history of felony convictions indicating the use or threat of violence. Defense counsel also knew that the prosecutor would attempt to establish this history by proving Rompilla's prior conviction for rape and assault, and would emphasize his violent character by introducing a transcript of the rape victim's prior testimony. The Supreme Court concluded that Rompilla's trial lawyers were deficient in failing to examine this significant aggravator, which included reviewing the available court file on Rompilla's prior conviction. Further, if defense counsel had looked in the available "file on Rompilla's prior conviction, it is uncontested they would have found a range of mitigation leads that no other source had opened up." Rompilla, 545 U.S. at 390.

Unlike Wiggins and Williams, Hodges does not involve an undiscovered "nightmarish childhood" of repeated abuse. And, unlike Rompilla, Hodges does not involve any unchallenged aggravator or unexamined prior conviction. As emphasized in Marquard, Hodges must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state trial court applied Strickland to the facts of his case in an objectively unreasonable manner. Hodges has failed to meet the stringent requirements under the AEDPA.


**CUMULATIVE ERROR**

As a subclaim to ground four, Hodges:

urges this Court to review his ineffective assistance of counsel claim cumulative with the other errors, recognized by the Florida Supreme Court, which occurred at his penalty phase and sentencing proceeding.[9] The Florida Supreme Court found that the prosecutor's closing argument during the penalty phase was error. Hodges v. State, 595 So. 2d 929, 933-934 (Fla. 1992). However, the court found that the error was harmless and there was no objection. Id. The Florida Supreme Court also found that the cold, calculated and premeditated instruction was not unconstitutional and the issue was meritless. Hodges, 595 so. 2d at 934. However, the United States Supreme Court vacated Mr. Hodges' sentence and remanded in light of Espinosa v. Florida, 505 U.S. 1079, Hodges v. Florida, 506 U.S. 803 (1992). On remand, the Florida found this issue was procedurally barred because counsel failed to object at trial. Hodges v. State, 619 so. 2d 272, 273 (Fla. 1993).

The Florida Supreme Court has recognized that errors occurred at Mr. Hodges' capital penalty phase. In light of the Sixth Amendment error that Mr. Hodges presented at his evidentiary hearing this court must consider all of the errors that occurred during Mr. Hodges' capital penalty phase.

(Petition, Dkt. 30, at 58-59)

## HODGES' CUMULATIVE ERROR CLAIM HAS NO MERIT

The state trial court commented on the prosecutor's closing argument:

. . .A further word about the prosecutor's argument is needed, however. In attempting to persuade the jury that life imprisonment would not be appropriate, Hodges' prosecutor made the same argument made in several other capital cases. FN * E.g., Taylor v. State, 583 So. 2d 323 (Fla. 1991); Hudson v. State, 538 So. 2d 829 (Fla.), cert. denied, 493 U.S. 875, 110 S. Ct. 212, 107 L. Ed. 2d 165 (1989); Jackson v. State, 522 So. 2d 802 (Fla.), cert. denied, 488 U.S. 871, 102 L. Ed. 2d 153, 109 S. Ct. 183 (1988). In Hudson we summarily dismissed the issue because Hudson had not objected and the argument did not constitute reversible error in that case. In both Jackson and Taylor we held that the instant argument was improper and, because on the circumstances of Taylor the argument was not harmless error and had been objected to, vacated Taylor's sentence and ordered resentencing. In Jackson, on the other hand, we found the argument harmless. The instant case is closer to Hudson and Jackson than to Taylor.

---

[9] Hodges cites United States v. Baker, 432 F.3d 1189 (11th Cir. 2005) in support.

Hodges did not object to the prosecutor's argument and on the circumstances of his case we find the argument harmless error.

> FN* The prosecutor argued: What about life imprisonment? What can a person do in jail for life? You can cry. You can read. You can watch TV. You can listen to the radio. You can talk to people. In short, you are alive. People want to live. You are living. All right? If [the victim] had had a choice between spending life in prison or lying on that pavement in her own blood, what choice would [she] have made? But, you see, [she] didn't have that choice. Now why? Because George Michael Hodges decided for himself, for himself, that [she] should die. And for making that decision, for making that decision, he, too, deserves to die.

Hodges, 595 So. 2d at 933-934. (App. A13)  The Florida Supreme Court stated, in its order

affirming the denial of rule 3.850 relief:

> Hodges further argues that he was entitled to an evidentiary hearing pertaining to prosecutorial misconduct emanating from the State's penalty phase closing argument. The substantive portion of this claim is procedurally barred as it was raised and rejected on direct appeal. . . . In reviewing Hodges' direct appeal, this Court also considered the prosecutor's comments regarding the inappropriateness of life imprisonment for Hodges, and, reaching the substance of that claim under a harmless error analysis, determined that "on the circumstances of [Hodges'] case we find the argument harmless error." Hodges I, 595 So. 2d at 934. Consequently, since no reversible error existed, Hodges is unable to demonstrate the prejudice requisite for a successful ineffective assistance of counsel claim, rendering summary denial of the issue appropriate. See Gaskin, 737 So. 2d at 516.

> Those in dissent agree with Hodges' contention, concluding that counsel was ineffective for failing to object to the prosecutor's comments regarding life imprisonment--comments counsel should have known were improper by virtue of this Court's decision in Jackson v. State, 522 So. 2d 802 (Fla. 1988), rendered one year prior to Hodges' trial. See dissenting op. at 56. However, this position fails to acknowledge this Court's prior determination that the commentary upon which the dissent relies constituted harmless error, and the implication of that determination for the prejudice prong of the Strickland standard. See Hodges I, 595 So. 2d at 933-34. This Court has previously examined the prosecutor's comments, as set forth in the dissenting opinion, through the prism of our decisions in Jackson, Hudson v. State, 538 So. 2d 829 (Fla. 1989), and Taylor v. State, 583 So. 2d 323 (Fla.

1991). In so doing, this Court previously determined that the instant case was more analogous to <u>Hudson</u>, where the defendant had failed to object to similar comments deemed not to constitute reversible error, and <u>Jackson</u>, where the defendant had objected to comments later deemed harmless, than to <u>Taylor</u>, where this Court determined that similar prosecutorial comments, to which defense counsel had objected, were not harmless. <u>See Hodges</u> I, 595 So. 2d at 933-34. There is no compelling reason to revisit that conclusion or overrule a determination of this Court entered in this case while before us in prior proceedings.

Moreover, this Court's comparison of Hodges' claim to <u>Jackson</u>--a case in which error was p r e s e r v e d through contemporaneous objection--coupled with the use of the phrase "harmless error," <u>see id.</u>, belies the contention that the Court applied a fundamental error analysis to the claim. Our prior decision simply does not support the position that had Hodges' counsel objected to the prosecutor's remarks, this Court would have reversed his conviction.

The dissenting opinion attempts to focus on counsel's purportedly deficient performance for failing to object to the prosecutor's closing argument. However, even a cursory review of the transcript reveals that defense counsel engaged in a strategy intended to sway the jury to return a life recommendation by distinguishing the crime committed by Hodges from more heinous first-degree murders. Trial counsel first debunked the existence of the witness elimination and CCP aggravators, and then reviewed the remaining statutory aggravators, reminding the jury after each that it did not apply in Hodges' case, and, thus, that the death penalty was not warranted.

<u>Hodges</u>, 885 So. 2d at 355-357. (App. D31)

The state court's disposition of Hodges' arguments related to his cumulative error claim was reasonable and correct. Standing alone, none of the alleged errors warrants any relief, and even when taken together, there is no semblance of an argument that the state court's rulings were contrary to or constituted an unreasonable application of any clearly established Supreme Court precedent. (<u>See</u> <u>Henyard v. Crosby</u>, 5:04-CV-621-Oc-10GRJ, order dismissing petition for writ of habeas corpus in capital case, pp. 10-14).

Ground four does not warrant habeas corpus relief.

## GROUND V

**WHETHER MR. HODGES DID NOT RECEIVE COMPETENT ASSISTANCE FROM A MENTAL HEALTH EXPERT AS HE WAS ENTITLED TO UNDER <u>AKE V. OKLAHOMA</u>, 470 U.S. 68 (1985), IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS.** (As stated by Petitioner)

Ground five is a "hybrid" ineffective assistance of counsel /<u>Ake</u> claim. Hodges claims that his trial counsel allegedly failed to provide the "information necessary" to conduct "a competent mental health evaluation for mitigation" to the mental health experts. (Petition, Dkt. 30, at 62). After conducting a postconviction evidentiary hearing, the state trial court rejected Hodges' claim that trial counsel failed to obtain adequate mental health expert assistance. The state trial court's written order reads, in pertinent part:

> In his second claim, Hodges contends that counsel failed to obtain adequate mental health expert assistance. Yet the record reflects that Mr. Perry obtained the services of a psychologist and a psychiatrist, Dr. Gamache and Dr. Maher. They were supplied with whatever background information Mr. Perry had available. Both examined Hodges and both reported to Mr. Perry that there was nothing, from a mental health perspective, which would assist the defense. Dr. Gamache went so far as to caution against listing him as a witness because his findings could be viewed as aggravating factors. Mr. Perry testified that his decision not to call either mental health professional at trial was a strategic decision. <u>Rutherford</u>, 727 So. 2d at 223.

> In his pretrial examination, Dr. Maher found that Hodges (1) was competent to proceed, (2) was sane at the time of the offense, (3) was not suffering from any brain illness, (4) engaged in irresponsible use of alcohol, and (5) had an impoverished childhood. At the evidentiary hearing, after reviewing the background information gathered by Capital Collateral Relief, Dr. Maher's opinion changed considerably. He now thinks Hodges suffers from (1) a chronic depressive disorder of longstanding duration, (2) significant brain damage to the frontal lobes which adversely affect his verbal skills, (3) a pattern of impoverishment and abuse, and (4) post traumatic stress disorder. Dr. Maher attributes his misdiagnosis to lack of background information. He is now in a position to testify that the capital felony was committed while Hodges was under the influence of extreme mental or

emotional disturbance. (Since Hodges has vehemently and consistently denied committing the murder, this court must conclude that Dr. Maher believes Hodges to be perpetually under the influence of extreme mental or emotional disturbance.)

Hodges attempts to circumvent the issue of Mr. Perry obtaining the services of prior mental health doctors by claiming that had counsel been effective in investigating his prior history, the doctors would have been able to utilize that information in their assessment of Hodges. Thus the original examinations were inadequate.

The Court finds that Hodges has failed to satisfy the first prong of Strickland. See State v. Sireci, 502 So. 2d 1221, 1223 (Fla. 1987) (holding that counsel can not [sic] be deemed ineffective for simply relying on what may have been less than complete psychiatric evaluations); See also Dugger. Testimony from the doctors during the evidentiary hearing revealed that Hodges suffers from depression, although the opinions differ on the level of severity. The experts also did not agree on whether or not Hodges suffered from brain damage. Additionally, the Court finds that any inadequacy in the initial mental examinations was the result of an uncooperative defendant and recalcitrant witness and not attributable to trial counsel. Rutherford at 225. A new sentencing hearing is not mandated simply because reasonable experts disagree about Hodges' mental condition.

(App. D11/1573-1575)

Thereafter, in affirming the state trial court's denial of rule 3.850 relief, the Florida

Supreme Court held:

Hodges argues that penalty phase counsel's failure to ensure that Hodges received the benefit of fully informed mental health experts constituted prejudicially deficient performance and deprived Hodges of his entitlement to expert psychiatric assistance as required under Ake v. Oklahoma, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985). The United States Supreme Court held in Ake that where an indigent defendant demonstrates to the trial judge that his sanity at the time of the offense will be a significant factor at trial, the state must "assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Ake, 470 U.S. at 83.

Hodges' Ake claim lacks merit. Hodges does not argue that he was denied access to mental health professionals or that these professionals failed to conduct the appropriate examinations. Indeed, any such claim would

run contrary to Dr. Maher's testimony that he conducted a standard psychiatric evaluation of Hodges prior to trial. Hodges had access to multiple mental health experts prior to trial, and the experts performed all of the essential tasks required by Ake. Thus, Hodges fails to establish a violation of the Ake rule. See Johnson v. State, 769 So. 2d 990, 1005 (Fla. 2000). Instead, Hodges simply recasts his ineffective assistance of counsel argument, which we reject for the reasons stated above.

Hodges, 885 So. 2d at 352-353. (App. D31)

Ground five has no merit.

Hodges combines this claim with ground four in the present federal petition and alleges that the state court's denial of this claim "is contrary to and an unreasonable application of clearly established federal law and is unsupported by the record." (Petitioner's Memorandum, Dkt. 31, at 61; Petition, Dkt. 30, at 64-65). However, Hodges does not identify any particular factual finding as erroneous, and does not assert any deficiency in the state fact-finding process.

In a pre-AEDPA case, Mills v. Singletary, 161 F.3d 1273, 1286 (11th Cir. 1998), the Eleventh Circuit rejected an ineffective assistance/Ake claim where both trial lawyers testified at the state trial court evidentiary hearing that nothing suggested that any mental heath examination was needed or that Mills indicated that they should offer any mental health issues as mitigating evidence. As the Eleventh Circuit reasoned in Mills:

> Mills contended that his lawyers' failure to pursue mental health issues as mitigating evidence demonstrated ineffective assistance. Both lawyers testified at the 3.850 hearing that nothing suggested that any mental heath examination was needed or that Mills indicated that they should offer any mental health issues as mitigating evidence. Bickerstaff also testified that "with the benefit of hindsight" she would have examined mental health evidence. As Strickland warns, however, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. 2052. Mills's lawyers presented

witnesses who testified as to mitigating circumstances at the penalty phase and sentencing, and "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding...." Ake v. Oklahoma, 470 U.S. 68, 82, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). We agree with the district court that Mills's lawyers' actions fell within Strickland's wide range of reasonable professional assistance.

Mills, 161 F.3d at 1286.

In Grayson v. Thompson, 257 F.3d 1194, 1231 (11th Cir. 2001), a post-AEDPA case, the Eleventh Circuit also rejected a habeas petitioner's substantive Ake claim, and reiterated:

The Supreme Court set forth the standards governing a criminal defendant's due process rights to appropriate expert assistance in Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). In Ake, the Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." Ake v. Oklahoma, 470 U.S. 68, 74, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). In reaching this decision, the Supreme Court noted that there is no general obligation for a State to purchase for an indigent defendant all the assistance that his wealthier counterpart might buy. Rather, due process requires that an indigent defendant be given the "basic tools" necessary to present his defense. Taking into account the defendant's interest in the accuracy of the criminal proceeding, the limited financial burden imposed upon the State, and the value of psychiatric assistance in presenting an insanity defense, the Supreme Court found that such expert psychiatric assistance in investigating and presenting an insanity defense clearly constituted such a "basic tool." Id. at 77-83, 105 S. Ct. 1087.

The Court emphasized that the entitlement to psychiatric assistance exists only in cases where a defendant's mental condition is "seriously in question" and that the State's obligation did not go beyond providing the defense with the assistance of one competent psychiatric expert. Further, the Court found that the states could provide such assistance as they saw fit and that a defendant's constitutional right did not include the authority "to choose a psychiatrist of his personal liking or to receive funds to hire his own." Id. at 82-83, 105 S. Ct. 1087.

Grayson, 257 F.3d at 1231.

Ake requires that a defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83. Hodges was afforded such assistance. While the defense experts who testified at the evidentiary hearing changed their diagnoses from those at the time of trial, the change was a result of information that was not given either to them or to defense counsel by Hodges or his family. No constitutional deficiency was shown in their examinations, nor has Hodges shown any deficiency on the part of counsel in hiring or providing information to these experts. Hodges' experts performed all the essential tasks required by Ake, and Hodges has not shown any constitutional violation by counsel or the mental health experts. Hodges' underlying Ake claim was not raised on direct appeal and, therefore, was procedurally barred, and his ineffective assistance of counsel/AKE claim correctly was found to be without merit.

Hodges must do more than satisfy Strickland. He must also show that in rejecting his IAC/Ake claim the state court applied Strickland and Ake to the facts of his case in an objectively unreasonable manner. Hodges has failed to do so, and therefore, his IAC/Ake claim must be denied under AEDPA.

Ground five does not warrant habeas corpus relief.

**GROUND VI**

**WHETHER THE JURY INSTRUCTION ON THE "COLD, CALCULATED AND PREMEDITATED" AGGRAVATING CIRCUMSTANCE WAS VAGUE AND OVERBROAD, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS**. (As stated by Petitioner)

In his federal petition, Hodges attempts to resurrect a procedurally-barred challenge to the "CCP" jury instruction. On both direct and postconviction appeal, the Florida

Supreme Court ruled that Hodges' CCP claim was procedurally barred. <u>Hodges</u>, 619 So. 2d at 273 (App. S-A4); <u>Hodges</u>, 885 So. 2d at 355 (App. D31).

In denying Hodges' CCP jury instruction claim on remand from the United States Supreme Court on direct appeal, the Florida Supreme Court, in <u>Hodges v. State</u>, 619 So. 2d 272, 273 (Fla. 1993) (App. S-A4), stated:

> The United States Supreme Court vacated <u>Hodges v. State</u>, 595 So. 2d 929 (Fla. 1992), for further consideration in light of <u>Espinosa v. Florida</u>, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992). <u>Hodges v. Florida</u>, 113 S. Ct. 33, 121 L. Ed. 2d 6 (1992). We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and reaffirm our earlier decision in this case.
>
> The Court found the former standard instruction on the heinous, atrocious, or cruel aggravator insufficient in <u>Espinosa</u>. That aggravator played no part in Hodges' sentencing; the cold, calculated, and premeditated aggravator, however, did. Hodges argued to the trial court that the facts of his case did not support finding that latter aggravator and that the aggravator itself was unconstitutionally vague. AN* The trial court gave the standard instruction on the cold, calculated, and premeditated aggravator, but Hodges did not object to the form of that instruction, nor did he request an expanded instruction on this aggravator.
>
> > FN* We have uniformly rejected this claim on the merits. E.g., <u>Fotopoulos v. State</u>, 608 So. 2d 784 (Fla. 1992); <u>Klokoc v. State</u>, 589 So. 2d 219 (Fla. 1991). We have never addressed the issue of whether the standard jury instruction itself was vague and do not in this opinion because of our disposition of this case.
>
> The contemporaneous objection rule applies to <u>Espinosa</u> error, i.e., a specific objection on the form of the instruction must be made to the trial court to preserve the issue for appeal. E.g., <u>Thompson v. State</u>, 619 So. 2d 261, 1993 Fla. LEXIS 587, 18 Fla. Law W. S 212 (Fla. 1993); <u>Burns v. State</u>, 609 So. 2d 600 (Fla. 1992); <u>Melendez v. State</u>, 612 So. 2d 1366, 1992 Fla. LEXIS 1931, 17 Fla. Law W. S 699 (Fla. 1992); see <u>Sochor v. Florida</u>, 112 S. Ct. 2114, 119 L. Ed. 2d 326 (1992). Despite the failure to object at trial, Hodges challenged the constitutionality of the cold, calculated instruction on appeal. We summarily found the issue meritless, but we should have held it procedurally barred because Hodges did not preserve it for review by objecting at trial. Therefore, we now hold that the sufficiency of the cold, calculated instruction has not been preserved for review.

Even if this issue were cognizable, we would not agree with Hodges that he should be resentenced. There is ample support in the record for finding the cold, calculated, and premeditated aggravator. Any error in the instruction, if any existed, therefore, was harmless and would not have affected the jury's recommendation or the judge's sentence. Thompson. Thus, we reaffirm our decision as to Hodges' conviction of first-degree murder and sentence of death.

It is so ordered.

Hodges, 619 So. 2d at 272-273. (App. S-A4)

When Hodges attempted to resurrect the CCP jury instruction claim in his postconviction appeal, the Florida Supreme Court found: (1) Hodges' underlying CCP claim was procedurally barred; and (2) Hodges could not demonstrate any prejudice under Strickland inasmuch as the Florida Supreme Court previously determined that "error in the instruction, if any existed, was harmless and would not have affected the jury's recommendation or the judge's sentence." Hodges, 885 So. 2d at 355. (App. D31).

Specifically, the Florida Supreme Court held:

Hodges contends that he was entitled to an evidentiary hearing on the trial court's provision of an unconstitutional cold, calculated, and premeditated jury instruction. The substance of Hodges' claim is procedurally barred because the Court has previously addressed it and determined that the sufficiency of the cold, calculated and premeditated instruction was not preserved for review. See Hodges II, 619 So. 2d at 273. The ineffective assistance of counsel portion of the claim is meritless because this Court also previously determined that error in the instruction, if any existed, was harmless and would not have affected the jury's recommendation or the judge's sentence. See id. Thus, as the trial court determined, Hodges cannot satisfy the prejudice prong of the Strickland test. Therefore, summary denial of this claim was appropriate. See Gaskin, 737 So. 2d at 516.

Hodges, 885 So. 2d at 355 (App. D31)

Hodges' challenge to the CCP jury instruction is procedurally barred in this Court.

"A state habeas corpus petitioner who fails to raise his federal claims properly in state court

is procedurally barred from pursuing the same claims in federal court absent a showing of cause for and actual prejudice from the default." Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07, 53 L. Ed. 2d 594 (1977)).  The state trial court correctly applied state procedural bar principles  to conclude that Hodges' CCP claim was procedurally barred. A habeas petitioner may escape the procedural default doctrine either through showing "cause for the default and prejudice" or establishing a "fundamental miscarriage of justice." Bailey, 172 F.3d at 1306 (quotation marks and citation omitted). However, Hodges fails to make either showing. Hodges has not shown the requisite cause to excuse his procedural default. Furthermore, he has not established a "fundamental miscarriage of justice" inasmuch as this exception occurs only in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent and therefore is not "eligible for the death penalty." Sawyer v. Whitley, 505 U.S. 333, 340-41 (1992).

Ground six does not warrant habeas corpus relief.

## GROUND VII

**WHETHER MR. HODGES' SENTENCE OF DEATH VIOLATES THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BECAUSE THE BURDEN WAS SHIFTED TO MR. HODGES TO PROVE THAT DEATH WAS INAPPROPRIATE AND BECAUSE THE SENTENCING JUDGE HIMSELF EMPLOYED THIS IMPROPER STANDARD IN SENTENCING MR. HODGES TO DEATH.** (As stated by Petitioner)

Hodges alleges that the "burden was shifted to him to prove that death was inappropriate." (Petition, Dkt. 30, at 70).  The state trial court found Hodges' burden-shifting claim procedurally barred because Hodges did not raise the challenge to the propriety of jury instructions at trial and on direct appeal. (App. D11/1579-80) However, the Florida

Supreme Court summarily denied the claim on the merits, on appeal. Hodges, 885 So. 2d at 359, n. 9 & 10 (App. D31).[10]

In summarily denying Hodges' claim, the Florida Supreme Court ruled:

Hodges raises several additional claims in either his 3.850 appeal or petition for writ of habeas corpus. [n9] These arguments have consistently been determined to lack merit. [n10] Hodges provides no compelling reason for us to reconsider long-established law on these points, and we therefore decline to address these claims at length in this context.

[n9 These claims include: the jury instructions shifted the burden to Hodges to prove that the death sentence was inappropriate and the same standard was employed by the sentencing judge; Florida's death penalty statute is unconstitutional because aggravating factors are not charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt by a unanimous vote of the jury; and the death penalty statute is unconstitutional because it fails to prevent the arbitrary and capricious imposition of the death penalty, violates due process, and constitutes cruel and unusual punishment.]

Hodges, 885 So. 2d at 359, n. 9 & 10 (App. D31)

Hodges cannot demonstrate that the state court acted contrary to or unreasonably applied any prevailing federal law. The facts, as alleged, do not suggest any inconsistency with Mullaney v. Wilbur, 421 U.S. 684 (1975), or any United States Supreme Court decisions noted in his argument. The Eleventh Circuit has previously rejected Hodges' claim with regard to burden shifting. Henderson v. Dugger, 925 F.2d 1309, 1317-18 (11th Cir. 1991), cert. denied, 506 U.S. 1007 (1992). Furthermore, any allegations of

---

[10] The Florida Supreme Court has repeatedly rejected this same burden-shifting claim as procedurally barred. See, Harvey v. Dugger, 656 So. 2d 1253, 1255-1256 (Fla. 1995); Roberts v. State, 568 So. 2d 1255, 1257-1258 (Fla. 1990). This procedural bar was not excused by the allegation of ineffective assistance of counsel, as the Florida Supreme Court made it clear that allegations of ineffective assistance of counsel in failing to preserve issue for appeal cannot be used to circumvent the rule that post-conviction proceedings cannot serve as second appeal. Cherry v. State, 659 So. 2d 1069 (Fla. 1995).

constitutional error with regard to any of the jury instructions would require the creation of a new procedural rule, that could not be applied retroactively to Hodges' case. <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997) (challenge to jury instructions as unconstitutionally vague was barred by <u>Teague</u>).

Ground seven does not warrant habeas corpus relief.

## GROUND VIII

**WHETHER IMPROPER PROSECUTORIAL COMMENTS BEFORE THE JURY AT THE PENALTY PHASE AND BEFORE THE JUDGE AT THE SENTENCING HEARING DEPRIVED MR. HODGES OF A FAIR AND RELIABLE SENTENCING PROCEDURE, CONTRARY TO THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS.** (As stated by Petitioner)

## GROUND IX

**WHETHER INACCURATE COMMENTS OF BOTH THE PROSECUTOR AND THE TRIAL COURT GREATLY DIMINISHED THE JURY'S SENSE OF RESPONSIBILITY IN DECIDING WHETHER MR. HODGES SHOULD LIVE OR DIE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.** (As stated by Petitioner)

Grounds eight and nine are intertwined claims regarding the prosecutor's comments during the penalty phase. (Petition, Dkt. 30, at 75 and 81).

In ground eight, Hodges alleges that the prosecutor made improper comments during the penalty phase and at sentencing. In ground nine, Hodges contends that allegedly inaccurate comments were made by the prosecutor and state trial court judge regarding the sentencing recommendation. The essence of ground nine is that the comments by the prosecutor and the state trial court judge diminished the jury's sense of responsibility. On postconviction appeal, the Florida Supreme Court found Hodges' claims that the comments by the prosecutor and state trial court judge "diminished the jury's sense

of responsibility" were procedurally barred. <u>Hodges</u>, 885 So. 2d at 355-357 (App. D31)

Ground Eight

On direct appeal, the Florida Supreme Court rejected Hodges' challenge to the prosecutor's penalty phase closing arguments:

> Hodges also argues that allowing testimony about the victim's prosecuting him for indecent exposure and his attempts to dissuade her from doing so, the victim's sister's breaking down in tears while testifying, and the prosecutor's closing argument violated <u>Booth v. Maryland</u>, 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529 (1987), and <u>South Carolina v. Gathers</u>, 490 U.S. 805, 104 L. Ed. 2d 876, 109 S. Ct. 2207 (1989). Recently, however, the United States Supreme Court held that

> > if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

<u>Payne v. Tennessee</u>, 501 U.S. 808, 826-827 (1991).

> > FN* The prosecutor argued: What about life imprisonment? What can a person do in jail for life? You can cry. You can read. You can watch TV. You can listen to the radio. You can talk to people. In short, you are alive. People want to live. You are living. All right? If [the victim] had had a choice between spending life in prison or lying on that pavement in her own blood, what choice would [she] have made? But, you see, [she] didn't have that choice. Now why? Because George Michael Hodges decided for himself, for himself, that [she] should die. And for making that decision, for making that decision, he, too, deserves to die.

<u>Hodges</u>, 595 So. 2d at 933-934. (App. A13)

In <u>Payne</u>, the United States Supreme Court receded from the holdings in <u>Booth</u> and <u>Gathers</u> that "evidence and argument relating to the victim and the impact of the victim's

- 45 -

death on the victim's family are inadmissible at a capital sentencing hearing." The only part of <u>Booth</u> not overruled by <u>Payne</u> is "that the admission of a victim's family members" characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment." <u>Id.</u> at 2611 n.2. The comments and testimony Hodges complains about are not the type of victim impact evidence that the Court did not address, i.e., is still <u>Booth</u> error, in <u>Payne</u>. Therefore, there is no merit to Hodges' <u>Booth</u> claim. Furthermore, Hodges did not object to the prosecutor's argument and on the circumstances of Hodges' case, the prosecutor's argument is, at most, harmless error.

Ground Nine

On Hodges' subsequent post-conviction appeal, the Florida Supreme Court found that Hodges' claims that the prosecutor's and state trial court's comments "diminished the jury's sense of responsibility" were procedurally barred. The Florida Supreme Court explained:

> Hodges also claims that comments by the prosecutor and trial court diminished the jury's sense of responsibility for the sentencing process, and merited an evidentiary hearing. This claim is not cognizable on collateral review because Hodges could have but did not raise the argument on appeal. <u>See Harvey v. Dugger</u>, 656 So. 2d 1253, 1256 (Fla. 1995). Moreover, summary denial of the ineffective assistance of counsel portion of the claim was appropriate because the record refutes any claim of prejudice resulting from the complained-of comments. <u>See Gaskin</u>, 737 So. 2d at 516. This Court has consistently determined that similar claims lack merit, see <u>Cook v. State</u>, 792 So. 2d 1197, 1201 (Fla. 2001), and the record in the instant case does not support any conclusion to the contrary.

<u>Hodges</u>, 885 So. 2d at 355-357. (App. D31)

Hodges' present <u>Caldwell</u>[11] claim, that comments and instructions to his jury

---

[11] <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985).

unconstitutionally diminished its sense of responsibility, is procedurally barred. Even if the claim were not procedurally barred, the claim has no merit. In order to establish constitutional error under Caldwell, a petitioner must show that the comments or instructions to the jury "improperly described the role assigned to the jury by local law." Romano v. Oklahoma, 512 U.S. 1, 9 (1994). The Eleventh Circuit has repeatedly recognized that comments describing the jury's role in Florida as making an advisory recommendation and the judge as the final sentencing authority do not present Caldwell error. Johnston v. Singletary, 162 F.3d 630 (11th Cir. 1998), cert. denied, 528 U.S. 883 (1999); Provenzano v. Singletary, 148 F.3d 1327, 1334 (11th Cir. 1998); Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997).

Hodges' jury was provided the standard instructions at the penalty phase. The Florida Supreme Court has recognized the jury instructions as properly describing the jury's role in Florida. Archer v. State, 673 So. 2d 17, 21 (Fla.), cert. denied, 519 U.S. 876 (1996) (Florida standard jury instructions adequately describe role to jury); Pope v. Wainwright, 496 So. 2d 798, 805 (Fla. 1986), cert. denied, 480 U.S. 951 (1987). The Florida courts, both the state trial court, and the Florida Supreme Court, did not ignore or misapply any federal cases in rejecting this issue as procedurally barred.

Grounds eight and nine do not warrant habeas corpus relief.

## GROUND X

**WHETHER MR. HODGES' JURY WAS MISLED AND INCORRECTLY INFORMED ABOUT ITS FUNCTION AT CAPITAL SENTENCING, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS.** (As stated by Petitioner)

Hodges alleges that the jury was given the "erroneous impression that they could

not render a valid sentence if they were tied six votes to six." (Petition, Dkt. 30, at 85).

Hodges did not raise this jury instruction claim at trial or on direct appeal. Hodges belatedly raised this procedurally-barred jury instruction claim as Issue VIID, page 99, in his state rule 3.850 postconviction appeal (App. D22). He did not cite any federal cases.

The Florida Supreme Court found that the claim was procedurally barred and also found that error, if any, was harmless in light of the jury's vote of ten to two. The Florida Supreme Court held:

> Finally, Hodges argues that he was entitled to an evidentiary hearing regarding whether the jury instructions employed in his case misled the jury to believe that they could not render a valid sentence if they were tied six votes to six. Again the substantive issue underlying Hodges' claim is procedurally barred because Hodges could have but did not raise the argument on appeal. See Harvey, 656 So. 2d at 1256. The ineffective assistance of counsel portion of the claim lacks merit because the judge did indeed advise the jury that if six or more of them recommended life, they would have made a life recommendation. While Hodges concedes that these instructions were proper, he contends that they were rendered nugatory by previous statements giving the jury the erroneous impression that they could not return a valid sentence if the vote was tied. This Court has recently considered and rejected a substantially similar argument. See Floyd v. State, 808 So. 2d 175, 185-86 (Fla. 2002). Moreover, as the trial court found, any extant error was harmless because the jury returned a death recommendation by a vote of ten to two. Given that the record clearly refutes Hodges' ability to satisfy the prejudice prong of Strickland, summary denial was appropriate.

Hodges, 885 So. 2d at 357. (App. D31)

It is well established that claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992). To the extent that any federal question

has been suggested in the current habeas petition,[12] that federal question was not exhausted in state court. Baldwin v. Reese, 541 U.S. 27 (2004) (finding state inmate claim of "ineffective assistance" did not exhaust federal issue of adequacy of counsel where federal nature of claim was not apparent from face of state court pleading); Anderson v. Harless, 459 U.S. 4, 6-8 (1982). Hodges's state court pleadings did not even summarily refer to any federal case law. Thus, no federal issue was exhausted. Castillo v. McFadden, 399 F.3d 993 (9th Cir. 2005); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999), cert. denied, 529 U.S. 1009 (2000).

Because this issue was raised only as a state law claim, it is not subject to further consideration, and any federal question is now procedurally barred. O'Sullivan, 526 U.S. at 848; Turner, 339 F.3d at 1281; Snowden, 135 F.3d at 736; Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

In addition, ground ten is facially insufficient as a matter of law. Even now, Hodges has failed to cite any United States Supreme Court precedent in either his habeas petition or memorandum of law. Any claim that does not identify the relevant clearly established federal law ignored or misapplied by the state courts is necessarily insufficient. Washington v. Crosby, 324 F.3d 1263, 1265-66 (11th Cir. 2003) (concluding state court decision could not be contrary to established federal law where defendant did not cite any U. S. Supreme Court precedent to support his constitutional claim).

Furthermore, Hodges' jury instruction claim must be dismissed due to an express finding of a procedural bar in the Florida courts. Hodges' jury instruction complaint involves

---

[12] No federal cases are cited in either the petition or memorandum on claim ten. (See, Hodges' Petition, Dkt. 30, at 84-86; Hodges' Memorandum, Dkt. 31, at 74).

an issue which, under Florida law, should have been objected to at trial and raised on direct appeal in order to be properly preserved for review. Instead, it was raised in state collateral proceedings and expressly found to be procedurally barred. Since this underlying jury instruction claim was denied pursuant to adequate and independent state procedural rules, federal review is precluded. O'Sullivan, 526 U.S. at 848; Coleman, 501 U.S. at 750; Wainwright v. Sykes, 433 U.S. 72, 78 (1977); Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000), cert. denied, 532 U.S. 926 (2001).

Ground ten does not warrant habeas corpus relief.

## GROUND XI

**WHETHER BY FINDING TWO AGGRAVATING CIRCUMSTANCES BASED UPON THE SAME ESSENTIAL FEATURE OF THE OFFENSE, THE TRIAL COURT APPLIED AGGRAVATING CIRCUMSTANCES OVERBROADLY, CONTRARY TO THE EIGHTH AND FOURTEENTH AMENDMENTS.** (As stated by Petitioner)

## GROUND XII

**WHETHER THE TRIAL COURT'S FINDINGS IN SUPPORT OF THE AGGRAVATING CIRCUMSTANCES WERE UNSUPPORTED BY THE RECORD AND DID NOT APPLY THE LIMITING CONSTRUCTIONS OF THE AGGRAVATING CIRCUMSTANCES, RESULTING IN AN OVERBROAD APPLICATION OF THOSE CIRCUMSTANCES IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS.** (As stated by Petitioner)

Grounds eleven and twelve are intertwined allegations concerning the application of the two aggravating factors in state court. (Petition, Dkt. 30, at page 87) Hodges raised ground eleven, alleging that the aggravators of 1) CCP and 2) "disrupt or hinder law enforcement" were based on the "same essential feature of the offense," as Issue VII, page 70 on direct appeal (App. A10); however, Hodges did not cite any federal cases in

support of his claim. Consequently, any newly-asserted, alleged federal constitutional claim is procedurally barred.

Hodges raised ground twelve -- that the facts supporting the aggravators allegedly were unsupported by the record -- as Issue VI, page 65 on direct appeal (App. A10). The only federal case he cited was Parker v. Dugger, 498 U.S. 308 (1991) (noting that in Florida, "the death penalty may be imposed only where specified aggravating circumstances outweigh all mitigating circumstances." Id. at 318, citing Fla. Stat. § 921.141(3) (1985).

On direct appeal in Hodges v. State, 595 So. 2d 929, 934 (Fla. 1992) (App. A13), the Florida Supreme Court held:

> In aggravation the trial court found that Hodges committed this murder both to disrupt or hinder the lawful exercise of government functions or enforcement of the law and in a cold, calculated, and premeditated manner. Hodges now argues that the record does not support finding these two aggravators, that the court improperly doubled them, and that the cold, calculated instruction is unconstitutional. We find no merit to these arguments. The court found that Hodges' sole purpose in killing the victim was to prevent his being prosecuted for indecent exposure and that he planned her execution in a cold, calculated, and premeditated manner. The record supports these conclusions, and the court properly found that these aggravators had been established. Cf. Shere v. State, 579 So. 2d 86 (Fla. 1991); Pardo v. State, 563 So. 2d 77 (Fla. 1990), cert. denied, 114 L. Ed. 2d 127, 111 S. Ct. 2043 (1991); Koon v. State, 513 So. 2d 1253 (Fla. 1987), cert. denied, 485 U.S. 943, 99 L. Ed. 2d 284 , 108 S. Ct. 1124 (1988); Lara v. State, 464 So. 2d 1173 (Fla. 1985). Each aggravator is supported by sufficient distinct facts, and the trial court did not double them improperly. We have held the complained-about penalty instruction to be constitutional. Brown v. State, 565 So. 2d 304 (Fla.), cert. denied, 112 L. Ed. 2d 547, 111 S. Ct. 537 (1990).

Hodges, 595 So. 2d at 934. (App. A13)

## Ground Eleven

Hodges raised ground eleven in a one-paragraph argument on direct appeal, solely

as a fact-based claim and a matter of state law: that the trial court found both aggravating circumstances "based upon the same essential feature of the offense." (App. A10 at 70). Claims alleging a violation of state law are not subject to review in federal habeas proceedings. See, Pulley, McCullough, *supra*. Any newly-asserted federal constitutional claim is procedurally barred. See, O'Sullivan, 526 U.S. at 848; Turner, 339 F.3d at 1281; Snowden, 135 F.3d at 736; Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Moreover, on the merits, the state trial court's order clearly sets out the facts that supported a finding for each aggravating circumstance; and the Florida Supreme Court specifically found that "each aggravator is supported by sufficient distinct facts, and the trial court did not double them improperly." The state court's findings are supported by the record and entitled to a presumption of correctness.

The evidence to support the cold, calculated and premeditated aggravator included the evidence presented at trial that Hodges waited at the Beverage Barn with a shotgun for Betty Ricks to arrive. He then he walked up to her saying, "Sorry about this," and then fired several bullets from his shotgun into her head and neck.

The evidence to support the disrupt or hinder law enforcement aggravator included the evidence that Hodges executed Betty Ricks in order to prevent the prosecution of the indecent exposure case.

In Mills v. Singletary, 161 F.3d 1273, 1280 (11th Cir. 1998), a pre-AEDPA case, another habeas petitioner argued that the trial court and the Florida Supreme Court failed to evaluate mitigation evidence in contravention of Parker v. Dugger, 498 U.S. 308 (1991). In rejecting Mills' Parker v. Dugger claim, the Eleventh Circuit explained:

> Mills contends that the Florida courts failed to consider and evaluate

the record for mitigation evidence that would have precluded the trial court's override of the jury recommendation, in contravention of Parker v. Dugger, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). Mills also argues that the Florida Supreme Court failed to conduct an independent review of nonstatutory mitigating factors presented at sentencing. We review the district court's factual finding that the Florida courts considered and evaluated the record for mitigation evidence under the clearly erroneous standard. Spaziano v. Singletary, 36 F.3d 1028, 1032 (11th Cir. 1994), cert. denied, 513 U.S. 1115, 115 S. Ct. 911, 130 L. Ed. 2d 793 (1995).

After a review of the record, we find no clear error in the district court's finding that the trial court weighed and considered evidence of mitigation and aggravation, including nonstatutory mitigation. The trial court's sentencing order concluded, "it is the finding of this Court after weighing the aggravating and mitigating circumstances that there are sufficient aggravating circumstances as specified in 921.141 and insufficient mitigating circumstances therein that a sentence of death is justified." [n12] Also, as the district court found, the trial court's order denying Mills's motion for post-conviction relief noted that Mills had presented substantial mitigating evidence at the sentencing phase, including Mills's disadvantaged upbringing.

> n12 At the time of Mills's sentencing, Florida Statute § 921.141(3) required that the trial judge set forth explicit findings as to only the statutory aggravating and mitigating circumstances. See Mason v. State, 438 So. 2d 374, 379-80 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S. Ct. 1330, 79 L. Ed. 2d 725 (1984). Florida has since changed the statute and now requires a trial court to evaluate expressly in its sentencing order each nonstatutory mitigating circumstance that a defendant proposes. See Campbell v. State, 571 So. 2d 415, 419-20 (1990).

Additionally, we agree with the district court's finding that the Florida Supreme Court evaluated adequately mitigation evidence in the record, based on our discussion of the override claim. The Florida Supreme Court--on direct review and again on review of Mills's post-conviction 3.850 motion--discussed mitigating circumstances in the record. See Mills, 603 So. 2d at 483-84 (post-conviction 3.850 motion); Mills, 476 So. 2d at 178-79 (direct review). Justice McDonald's concurring and dissenting opinion on direct review also shows that the Florida Supreme Court considered nonstatutory mitigating factors. See Mills, 476 So. 2d at 180 (McDonald, J., concurring in part and dissenting in part). The district court's finding that the Florida Supreme Court considered mitigation evidence adequately and within the dictates of Parker v. Dugger is thus not clearly erroneous.

n13 <u>Mills</u> raises as a separate issue that the trial court's failure to find mitigating circumstances, and the Florida Supreme Court's subsequent affirmance (despite noting that mitigation was in the record), violated <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 114-15, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982) and <u>Lockett v. Ohio</u>, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). Consistent with our analysis above, we reject this argument as well.

<u>Mills</u>, 161 F.3d at 1283-1284.

In Hodges' post-AEDPA case, neither aggravating circumstance was based upon the same essential feature of the offense; therefore, both aggravating factors were properly found and upheld on direct appeal. Hodges has failed to establish that the Florida state trial court's decision was contrary to or an unreasonable application of clearly established federal law. Hodges is not entitled to relief under the AEDPA.

Grounds eleven and twelve do not warrant habeas corpus relief.

### GROUND XIII

**WHETHER THE TRIAL COURT AND THE FLORIDA SUPREME COURT ON DIRECT APPEAL VIOLATED THE EIGHTH AMENDMENT BY FAILING TO PROPERLY CONSIDER MR. HODGES' EVIDENCE OF MITIGATING CIRCUMSTANCES.** (As stated by Petitioner)

On direct appeal, Hodges argued that the state trial court failed to properly consider mitigation evidence. This claim was raised as Issue VIII, page 71 on direct appeal (App. A10), citing the federal cases of <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989), and <u>Parker v. Dugger</u>, 498 U.S. 308 (1991). Hodges' additional allegation in this federal petition, that the Florida Supreme Court, on direct appeal, also failed to properly consider his mitigation evidence, is procedurally barred.

On direct appeal, the Florida Supreme Court rejected Hodges' claim "that the trial

court failed to consider his mitigation evidence properly":

As his final points on appeal, Hodges claims that the trial court failed to consider his mitigating evidence properly and that his death sentence is disproportionate. In the sentencing order the judge stated that he

attempted to find mitigating circumstances sufficient in weight to offset the above aggravating circumstances so as to prevent imposition of the death penalty. Mr. Hodges' family has spoken as to his character and dedication to his family. The Court has considered especially the loyalty that apparently existed between Mr. Hodges and his wife in her expressions of disbelief that he could perform such an act as the killing of BETTY RICKS, and her attempts to protect him in her initial statements to investigating officers after January 8, 1987. The Court has especially considered the relationship of love as apparently existed between the Defendant and his step-son and the true companionship they have apparently shared before the tragic events of January 8, 1987.

However, in balancing all aspects of the Defendant's character, which is the only statutorily enumerated mitigating circumstance the Court has found in the facts of this case, against the aforesaid aggravating circumstances, the Court finds that the aggravating circumstances far outweigh any mitigating circumstances and that the killing of BETTY RICKS by GEORGE MICHAEL HODGES requires the ultimate sanction.

The reference to "the only statutorily enumerated mitigating circumstance" obviously means the jury instruction directing consideration of all aspects of the defendant's character, i.e., nonstatutory mitigating evidence. It is also obvious that the judge considered the nonstatutory mitigating evidence that Hodges presented. Hodges complains that the judge did not specifically address his childhood, educational background, close family relationships, and employment history, but Hodges did not point out to the judge the nonstatutory mitigators he felt had been established. Lucas v. State, 568 So. 2d 18 (Fla. 1990), directs that defendants share the burden of identifying nonstatutory mitigators, and we will not fault the trial court for not guessing which mitigators Hodges would argue on appeal. There is no merit to Hodges' claim that the court refused to consider the evidence presented in mitigation. The cases cited by Hodges in his proportionality argument are factually distinguishable, and the death sentence is proportionate in the instant case. E.g., Shere; Koon; Lara.

Therefore, we affirm Hodges' death sentence as well as his conviction of first-degree murder.

Hodges, 595 So. 2d at 934-935. (App. A13)

Hodges' argument on direct appeal in the Florida Supreme Court was two-fold: (1) that the state trial court's evaluation of the mitigating circumstance failed to satisfy the Florida Supreme Court's requirements and (2) that the state trial court seemed to restrict itself to the consideration of only statutory mitigating circumstances. This argument has no merit.

During the penalty phase, Attorney Perry presented Hodges' mother, Lulu Hodges, and Hodges' brother-in-law, Harold Stewart. Hodges' mother testified that Hodges was the youngest of five children and that at some point Hodges' older brother drowned. She testified that the older brother's drowning changed Hodges completely because they were "real close." (App. A6/ 693-694) She stated that Hodges was unable to establish any long-term friendships because the family "moved around a lot when he was growing up." His activities were confined mostly to the family unit. (App. A6/694) She also testified that Hodges was a good father, that he loved his children and that he had earned his G.E.D. (App. A6/695) Hodges' brother-in-law, Harold Stewart, testified that he worked with Hodges and that Hodges was a good worker. (App. A6, R 697) He also noted that Hodges was a good father, that he loved his stepchildren and children. Attorney Perry argued to the jury during closing argument in the penalty phase that this crime was mitigated by the fact that although the Ricks loved their daughter, the Hodges also loved their son. He also argued that the Hodges "moved around a lot" and that Hodges was not able to establish any close attachments to anyone other than his family and an older brother who drowned, an event

that affected Hodges deeply. (App. A6/723) Defense counsel also argued that Hodges must have been a fairly good husband and that his children loved him. (App. A6/724)

Because non-statutory mitigating evidence is very "individualized," the Florida Supreme Court has required that the defense must "share the burden" of identifying any nonstatutory mitigating factors. On direct appeal, Hodges complained that the state trial court "did not *specifically address* his childhood, educational background, close family relationships, and employment history." However, the Florida Supreme Court specifically found that, "Hodges did not point out to the [state trial court] judge the nonstatutory mitigators he felt had been established. Lucas v. State, 568 So. 2d 18, 24 (Fla. 1990) directs that defendants "share the burden" of identifying nonstatutory mitigators, and "we will not fault the trial court for not guessing which mitigators Hodges would argue on appeal. There is no merit to Hodges' claim that the court refused to consider the evidence presented in mitigation." Hodges, 595 So. 2d at 934-935, cert. granted, remanded on other grounds, Hodges v. Florida, 506 U.S. 803 (1992), opinion reaffirmed, Hodges v. State, 619 So. 2d 272 (1993), cert denied, Hodges v. Florida, 510 U.S. 996 (1993). As shown above, Hodges' identification of particularized mitigators, specified for the first time on direct appeal, was procedurally barred. Id. Moreover, there was no merit to Hodges' claim that the state trial court refused to consider the evidence presented in mitigation. Id.

Even if the state trial court arguably failed to consider any unspecified mitigating factor, a review of the non-statutory mitigating factors identified by Hodges on direct appeal shows that none of the evidence as presented outweighed the substantial aggravating factors in this case. The following mitigating factors were specifically identified by Hodges for the first time on direct appeal and are reasserted in his habeas petition:

(1) Traumatic Childhood Experiences -- George Hodges was born in 1957, and he was the youngest of five children. Hodges' mother testified that he had a close knit family and that even though they moved around, George was close to his family. The only childhood tragedy spoken of was the drowning of one of his older brothers.

The older brother's death, alone, does not constitute the type of dramatic childhood experiences usually considered as mitigating evidence. See, Eddings, 455 U.S. at 115.

2) Deprived Educational Background -- Hodges' mother testified that the defendant chose not to finish high school because his family moved to another state, but he later obtained his G.E.D.

This is not the type of deprived educational background that supports a finding of mitigation.

(3) Close Family Relationships -- The trial court considered evidence that Hodges was close to his family and the loyalty of his wife and stepson.

However, the evidence of the defendant's relationships was not so overwhelming as to outweigh the two substantial aggravating factors.

(4) Employment History -- The evidence that Hodges was a good worker who never had any problems on the job does not constitute an exemplary work record.

Evidence that Hodges was a good worker alone was insufficient to support the finding of this mitigating factor.

Hodges' cold-blooded murder of 20-year-old Betty Ricks was committed solely to prevent his prosecution for indecent exposure. This crime was a result of a well-thought out process which very nearly resulted in Hodges' freedom from prosecution for both the indecent exposure and murder.[13] Even if Hodges had specifically identified the mitigating

---

[13] According to the state court record on direct appeal, Jessie Watson did not come forward with the truth until six months after Hodges confessed to him that he had killed Betty Ricks.

factors listed on direct appeal, doing so did not require the finding of additional mitigation, nor outweigh the two valid aggravators.

On direct appeal, Hodges also claimed that the trial court's order seemed to be restricted only to statutory mitigating factors. However, the Florida Supreme Court specifically found that the trial court's "reference to 'the only statutorily enumerated mitigating circumstance' "obviously means the jury instruction directing consideration of all aspects of the defendant's character, i.e., nonstatutory mitigating evidence. It is also obvious that the judge considered the nonstatutory mitigating evidence that Hodges presented." Hodges, 595 So. 2d at 934-935. (App. A13). The state court's findings are entitled to a presumption of correctness.

Finally, under the guise of a procedurally-barred claim that the Florida Supreme Court allegedly "failed to properly consider" Hodges' mitigating factors, Hodges, in reality, attempts to raise a "proportionality" claim. However, this is a matter of state law. Proportionality is not a federal constitutional right. See Pulley v. Harris, 465 U.S. 37, 43 (1984) (proportionality review not constitutionally mandated).

Ground thirteen does not warrant federal habeas corpus relief.

## GROUND XIV

**WHETHER FLORIDA STATUTE § 921.141 VIOLATES RING V. ARIZONA**
(As stated by Petitioner)

Hodges asserts that Florida's death penalty sentencing scheme violates his right to a jury trial in violation of Ring v. Arizona, 536 U.S. 584 (2002). (Petition, Dkt. 30, at 97). Hodges raised this claim in a state petition for writ of habeas corpus (App. D23) filed in the Florida Supreme Court.  The petition was denied in Hodges, 885 So. 2d at 359 (App. D31).

Hodges' reliance on Ring is barred by the non-retroactivity doctrine of Teague v. Lane, 489 U.S. 288 (1989). See, Schriro v. Summerlin, 542 U.S. 348 (2004) (holding that Ring v. Arizona, 536 U.S. 584 (2002), which extended application of Apprendi to facts increasing a defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review). Because Hodges is not entitled to consideration of Ring's implications on his death sentence, this claim does not merit habeas corpus relief. See also, Sibley v. Culliver, 377 F.3d 1196, 1207-1208 (11th Cir. 2004) (rejecting habeas petitioner's Ring claim "out of hand" and reiterating that, under "Turner and Summerlin, a petitioner may not appeal a conviction or bring a habeas attack based on Ring violations that occurred before Ring was handed down").

Furthermore, Hodges has not shown that Ring was violated. The Florida Supreme Court has expressly recognized that the statutory maximum for first degree murder under Florida's statutory scheme is death. Mills v. Moore, 786 So. 2d 532, 536-538 (Fla.), cert. denied, 532 U.S. 1015 (2001); Mann v. Moore, 794 So. 2d 595, 599 (Fla. 2001), cert. denied, 536 U.S. 962 (2002); Porter v. Crosby, 840 So. 2d 981, 986 (Fla. 2003); Shere v. Moore, 830 So. 2d 56, 61 (Fla. 2002) ("This Court has defined a capital felony to be one where the maximum possible punishment is death").

This Court must respect Florida's interpretation of its law on this issue. See Ring, 536 U.S. at 603. The Florida Supreme Court has rejected numerous Ring challenges, consistently finding that Florida's sentencing scheme comports with the Sixth Amendment. See Bottoson v. Moore, 833 So. 2d 693 (Fla.), cert. denied, 537 U.S. 1070 (2002); King v. Moore, 831 So. 2d 143 (Fla.), cert. denied, 537 U.S. 1067 (2002); Kormondy v. State, 845 So. 2d 41, 54 (Fla. 2003) (Ring does not encompass Florida procedures or require either

notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury). Hodges has not raised any federal constitutional error.  The state courts properly denied relief.

Ground fourteen does not warrant habeas corpus relief.

Hodges' Reply

The Court does not find any of Hodges' arguments in the reply persuasive. To the extent that Hodges argues that <u>Brecht v. Abrahamson</u>  507 U.S. 619 (1993) is not the proper standard for determining harmless error on collateral attack, this Court rejects the contention.

In <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" than the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.  <u>See</u> <u>California v. Roy</u>, 512 U.S. 117, 339 (1996) (citing <u>O'Neal v. McAninch</u>, 513 U.S. 432 (1995)).

Hodges alleges that the state court, in determining harmless error, must perform a <u>Chapman v. California</u>, 386 U.S. 18 (1967) harmless error analysis.  Nothing in the record demonstrates that the Florida state trial court or Florida Supreme Court failed to do so. The

Chapman standard is the Florida standard for harmless error. (See <u>Smith v. State</u>, 762 So. 2d 969, 970 (Fla. 2000)(citing <u>Goodwin v. State</u>, 751 So. 2d 537, 546 (Fla. 1999), <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), <u>State v. Lee</u>, 531 So. 2d 133, 136 n. 1 (Fla. 1988), <u>State v. DiGuilio</u>, 491 So. 2d. 1129, 1135 (Fla. 1986)).

Under Florida law, "The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." <u>Goodwin v. State</u>, 751 So. 2d at 540 (citing <u>Chapman</u>, 386 U.S. at 24).   Accordingly, the Court orders:

That Hodges' petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Hodges and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). <u>Id.</u> "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v.</u>

<u>Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 22, 2007.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record